# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| EPIC TECH, LLC and BLUE STREAK BIDS, LLC, | § § § | |
| *Plaintiffs*, | § § | Civil Case No. 5:23-cv-136 |
| v. | § § | **JURY TRIAL DEMANDED** |
| | § | |
| RALEIGH STARTUP SOLUTIONS LLC DBA GOOD LUCK NC and WWW.GOODLUCKNC.COM; CHUCK PATEL; NEAL PATEL; JYOTI PATEL; DJ'S BLUE ROOM LLC DBA DJ'S BLUE ROOM and THE BLUE ROOM; DAVID NOBLE JOHNSTON; JING XIU CHEN; LRC AMUSEMENTS LLC DBA PLAYER'S VAPE OF WASHINGTON and PLAY MOBILE; ASHLEY M. BROOKS AKA ASHLEY FERRELL; TREASURE SWEEPSTAKES INC. DBA JACKPOT RALEIGH NC and JACKPOT DURHAM; DOES 1–5; COCONUT'S CAFE LLC DBA COCONUT'S CAFE OF HENDERSON and COCONUT'S ONLINE; TARA VESTER; CYBER SKILLS INC. I DBA CYBERBIDS, CYBER BIDS OF NC, THE OFFICE, VIP SKILL GAMES, THE GAME ROOM, CRUMBLE GAMES, CYBERBIDS2, GAME LOUNGE, HAW RIVER BIDS, KINGS SWEEPSTAKES, GAME TIME, THE ORIGINAL PARADISE SKILL GAME CENTER, WWW.NCLEGALGAMES.COM, and WWW.ACEREVEALPROMO.COM; PAUL MANN; CASH OUT NC, INC. DBA CASH OUT SWEEPSTAKES, VEGAS-STYLE SWEEPSTAKES, VEGAS STYLE ENTERTAINMENT and WWW.CASHOUTT.COM; MICHAEL A. GRIFFIN; K&B | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 1**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 1 of 184

BUSINESS CENTER LLC DBA K&B §
BUSINESS CENTER SWEEPSTAKES; §
BRIAN WILLIAMS; SHAKIRA §
FIGARO; BLUE MAGIC CASINO; §
LARRY HILL; §
WWW.DKBLUMAGIC.COM; DOES §
6–10; WWW.FUNGAMESUSA.COM; §
DOES 11–15; §
WWW.LUCKYGAMES777.COM; §
DOES 16–20; GARRET HALL; §
WWW.NCONLINEGAMES.COM; §
KAISER HAUTER; DOES 21–25; §
WWW.PHANTOMFIRE.FUN; DOES §
26–30; PHANTOM FIRE MOBILE §
APP; DOES 31–35; §
WWW.PHANTOM-WIFI.COM; DOES §
36–40; §
WWW.PLAYPHANTOMWIFI.COM; §
DOES 41–45; §
WWW.DLPHANTOM.COM; DOES §
46–50; WWW.PHOENIXGOLD.MOBI; §
DOES 51–55, §
§
    *Defendants.* §

## PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

    Plaintiff Epic Tech, LLC ("Epic Tech") and Blue Streak Bids, LLC ("Redibids") (collectively "Plaintiffs") hereby file this Original Verified Complaint, Application for Temporary Restraining Order, and Request for Injunctive Relief against Raleigh Startup Solutions LLC dba as at least Good Luck NC and www.goodlucknc.com; Chuck Patel; Neal Patel; Jyoti Patel; DJ's Blue Room LLC dba as at least DJ's Blue Room and The Blue Room; David Noble Johnston; Jing Xiu Chen; LRC Amusements LLC dba as at least Player's Vape of Washington and Play Mobile; Ashley Brooks (aka Ashley Ferrell); Treasure Sweepstakes Inc. dba as at least Jackpot Raleigh NC and Jackpot Durham; Does 1–5 (the currently unknown owners and operators of Treasure

PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF      PAGE 2

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 2 of 184

Sweepstakes Inc.); Coconut's Café LLC dba as at least Coconut's Café of Henderson and Coconut's Online; Tara Vester; Cyber Skills Inc. I dba as at least Cyberbids, Cyber Bids of NC, The Office, VIP Skill Games, The Game Room, Crumble Games, Cyberbids2, Game Lounge, Haw River Bids, Kings Sweepstakes, Game Time, The Original Paradise Skill Game Center, www.nclegalgames.com, and www.acerevealpromo.com; Paul Mann; Cash Out NC, Inc. dba as at least Cash Out Sweepstakes, Vegas-Style Sweepstakes, Vegas Style Entertainment, and www.cashoutt.com; Michael A. Griffin; K&B Business Center LLC dba as at least K&B Business Center Sweepstakes, Brian Williams, Shakira Figaro; Blue Magic Casino; Larry Hill; www.DKBluMagic.com; Does 6–10 (the currently unknown owners and operators of DKBluMagic.com); www.FunGamesUSA.com; Does 11–15 (the currently unknown owners and operators of FunGamesUSA.com); www.LuckyGames777.com; Does 16–20 (the currently unknown owners and operators of Lucky777.com); Garret Hall; www.NCOnlineGames.com; Kaiser Hauter; Does 21–25 (the currently unknown owners and operators of NCOnlineGames.com); www.PhantomFire.fun; Does 26–30 (the currently unknown developers, owners, and operators of PhantomFire.fun); Phantom Fire mobile app; Does 31–35 (the currently unknown developers, owners, and operators of the Phantom Fire mobile app); www.Phantom-wifi.com; Does 36–40 (the currently unknown developers, owners, and operators of Phantom-wifi.com); www.PlayPhantomWifi.com; Does 41–45 (the currently unknown developers, owners, and operators of PlayPhantomWifi.com); www.DLPhantom.com; Does 46–50 (the currently unknown developers, owners, and operators of DLPhantom.com); www.PhoenixGold.mobi; Does 51–55 (the currently unknown developers, owners, and operators of PhoenixGold.mobi) (collectively, "Defendants"), and would respectfully show the Court as follows:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 3**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 3 of 184

# I.    INTRODUCTORY STATEMENT

1.    Plaintiff Epic Tech, LLC (hereinafter "Epic Tech") is a developer and marketer of software programs and entertainment games that are used in various formats throughout the country. In the jurisdictions in which it offers games, Epic Tech either licenses its software to certain third parties, who in turn distribute the software to local establishments, or directly licenses its software to local establishments. Epic Tech has recently discovered that Defendants have gained unauthorized possession of Epic Tech's proprietary sweepstakes software, and have engaged in a scheme to modify, copy, counterfeit, and distribute the software to unauthorized third parties within the state of North Carolina and throughout the world via the internet. Defendants do not have a license or any other lawful right to use Epic Tech's software, and this conduct intentionally violates Epic Tech's intellectual property rights and both federal and state law.

2.    Plaintiff Blue Streak Bids, LLC (hereinafter "Redibids") is a wholly owned subsidiary of Epic Tech. Redibids is the developer of a new kind of online auction website. Epic Tech has licensed Redibids to use Epic Tech's intellectual property. Redibids entered into agreements with various end users, including now-terminated agreements with a small number of the Defendants named herein. These agreements contain specific restrictions on the use of Epic Tech's intellectual property which those specific Defendants have breached. The agreements also entitle Plaintiffs to obtain full recovery of the costs of this suit against those Defendants and injunctive relief.

3.    Therefore, Plaintiffs bring this action and seek, among other things: (1) a preliminary and a permanent injunction to enjoin Defendants from continuing to use, copy, distribute, or misappropriate Epic Tech's software, including any altered version of its software, (2) the return of any improperly obtained software or equipment, and (3) the recovery of damages and attorneys' fees.

PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF                          PAGE 4

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 4 of 184

## II.    PARTIES

4.    Plaintiff Epic Tech is a limited liability company organized under the laws of the State of Delaware that has its principal place of business in the State of Georgia.

5.    Plaintiff Redibids is a limited liability company organized under the laws of the State of Delaware that has its principal place of business in the State of Georgia. Redibids is a wholly owned subsidiary of Plaintiff Epic Tech.

6.    Defendants operate physical establishments, online websites, and mobile applications that provide unauthorized counterfeit software and games. Upon information and belief, Defendants attempt to obscure their counterfeit operations by regularly creating new entities, physical establishments, websites, and mobile applications. Many of the Defendants do not register their business entities and go to great lengths to conceal their identities. Many of the Defendants register the domain names and developer information for their websites and mobile applications using privacy services that conceal the owners' identity or using aliases and false contact information.

7.    Defendant Raleigh Startup Solutions LLC dba as at least Good Luck NC and www.goodlucknc.com (hereinafter "Good Luck") is a gaming operator with at least two physical locations located at 3308 Capital Boulevard, Raleigh, NC 27604 and 5535 Western Boulevard, Suite 102, Raleigh, NC 27606, and at least one website found at the URL www.goodlucknc.com. Good Luck is a North Carolina LLC with its principal place of business at 5126 Bur Oak Circle, Raleigh, NC 27612. Good Luck may be served with process by serving its registered agent, Neal Patel, at 5126 Bur Oak Circle, Raleigh, NC 27612, or wherever it may be found.

8.    On information and belief, Defendant Chuck Patel is an individual residing in North Carolina and may be served with process at 5126 Bur Oak Circle, Raleigh, NC or wherever he may be found. Mr. C. Patel is the chief executive officer of Good Luck.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 5**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 5 of 184

9.      On information and belief, Defendant Neal Patel is an individual residing in North Carolina and may be served with process at 5126 Bur Oak Circle, Raleigh, NC or wherever he may be found. Mr. N. Patel is a member of Defendant Good Luck and its registered agent.

10.      On information and belief, Defendant Jyoti Patel is an individual residing in North Carolina and may be served with process at 5126 Bur Oak Circle, Raleigh, NC or wherever he may be found. Mr. J. Patel is a member of Defendant Good Luck.

11.      Defendant DJ's Blue Room LLC dba as at least DJ's Blue Room and The Blue Room (hereinafter "DJ's") is a gaming operator with at least two physical locations located at 3909 S. Wilmington Street, Raleigh, NC 27603-3601 and 1728 S. Saunders Street, Raleigh, NC 27603. DJ's is a North Carolina LLC with its principal place of business at 3909 S. Wilmington Street, Raleigh, NC 27603-3601. DJ's may be served by serving its registered agent, David Noble Johnston, at 3909 S. Wilmington Street, Raleigh, NC 27603-3601, or wherever it may be found.

12.      On information and belief, Defendant David Noble Johnston is an individual residing in North Carolina and may be served with process at 51 N. Lumina Lane, Clayton, NC 27527-3795, or wherever he may be found. Mr. Johnston is a managing member of Defendant DJ's.

13.      On information and belief, Defendant Jing Xiu Chen is an individual residing in North Carolina and may be served with process at 2810 Bedford Green, Apt.8, Raleigh, NC 27604-1814, or wherever he may be found. Mr. Chen is a managing member of Defendant DJ's.

14.      Defendant LRC Amusements LLC dba Player's Vape of Washington and Play Mobile (hereinafter "LRC") is a gaming company that has/had at least one physical location located at 4571 US-264, Washington, NC 27889 and has at least one online café found at the URL https://www.facebook.com/PlayersVape. LRC is a North Carolina LLC with its principal place of

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 6**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 6 of 184

business at 415 Rightmyer Drive, Roanoke Rapids, NC 27870. LRC may be served by serving its registered agent, Ashley M. Brooks (aka Ashley Ferrell), at 415 Rightmyer Drive, Roanoke Rapids, NC 27870, or wherever it may be found.

15.    On information and belief, Defendant Ashley M. Brooks (aka Ashley Ferrell) is an individual residing in North Carolina and may be served with process at 415 Rightmyer Drive, Roanoke Rapids, NC 27870, or wherever she may be found. Mrs. Brooks is a managing member of Defendant LRC.

16.    Defendant Treasure Sweepstakes Inc. dba as at least Jackpot Raleigh NC and Jackpot Durham (hereinafter "Jackpot") is a gaming operator with at least three physical locations located at (1) 3689 New Bern Avenue, Raleigh, NC 27610, (2) 2420 Wake Forest Road, Raleigh, NC 27608, and (3) 3318 Guess Road, Durham, NC 27705. Jackpot was incorporated in 2012 as a North Carolina corporation with its principal place of business at 3689 New Bern Avenue, Raleigh, NC 27610, but the North Carolina Department of Revenue suspended Jackpot in July 2018. Jackpot may be served at 3689 New Bern Avenue, Raleigh, NC 27610, or wherever it may be found.

17.    On information and belief, each of Defendants Doe 1–5 is an individual or entity who is an owner or operator of Defendant Jackpot. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

18.    Defendant Coconut's Café LLC dba as at least Coconut's Café of Henderson and Coconut Online (hereinafter "Coconut's") is a gaming operator with at least one physical location located at 419 Raleigh Road, Henderson, NC 27536, and has at least one online café found at the URL https://www.facebook.com/Coconuts-Online-606313913182138/ and at least one payment processing site found at the URL https://coconutonline.net/. Coconut's is a North Carolina LLC

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 7**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 7 of 184

with its principal place of business at 419 Raleigh Road, Henderson, NC 27536. Coconut's may be served with process by serving its registered agent, United States Corporation Agents, Inc., at 6135 Park South Drive, Suite 510m Charlotte, NC 28210, or wherever it may be found.

19.     On information and belief, Defendant Tara Vester is an individual residing in North Carolina and may be served with process at 6644 Turkey Chase Road, Battleboro, NC 27809, or wherever she may be found. Mrs. Vester is a manager of Defendant Coconut's.

20.     Defendant Cyber Skills Inc. I dba as at least Cyberbids, Cyber Bids of NC, The Office, VIP Skill Games, The Game Room, Crumble Games, Cyberbids2, Game Lounge, Haw River Bids, Kings Sweepstakes, Game Time, The Original Paradise Skill Game Center, www.nclegalgames.com, and www.acerevealpromo.com (hereinafter "Cyber Skills") is a gaming operator with at least nine physical locations located at (1) 2550 Capitol Drive, Creedmoor, NC 27522, (2) 2812 Guess Road, Durham, NC 27705, (3) 911 Martin Luther King Avenue, Oxford, NC 27565, (4) 225-A South Madison Boulevard, Roxboro, NC 27573, (5) 815 N. Madison Boulevard, Roxboro, NC 27573, (6) 2629 N. Church Street, Burlington, NC 27217, (7) 1146 U.S. Hwy. 86, Yanceyville, NC 27379, (8) 2620 S. Saunders Street, Raleigh, NC 27603, and (9) 25A Old Durham Road, Roxboro, NC 27573, and at least two websites found at the URLs www.nclegalgames.com and www.acerevealpromo.com. Cyber Skills is a North Carolina corporation with its principal place of business at 2722 Hardwood Lane, Hillsborough, NC 27278. Cyber Skills may be served with process by serving its registered agent, Kelly J. Mackay, at 240 Leigh Farm Road, Suite 100, Durham, NC 27707, or wherever it may be found.

21.     On information and belief, Defendant Paul Mann is an individual residing in North Carolina and may be served with process at 2722 Hardwood Lane, Hillsborough, NC 27278, or wherever he may be found. Mr. Mann is President of Defendant Cyber Skills.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 8**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 8 of 184

22.     Defendant Cash Out NC, Inc. dba as at least Cash Out Sweepstakes, Vegas-Style Sweepstakes, Vegas Style Entertainment, and www.cashoutt.com (hereinafter "Cash Out") is a gaming operator with at least one physical location located at 5540 Atlantic Springs Road, Suite 107, Raleigh, NC 27616, at least one website found at the URL www.cashoutt.com, and at least one online café found at the URL https://www.facebook.com/Vegasstylesweepstakes. Cash Out is a North Carolina corporation with its principal place of business at 5540 Atlantic Springs Road, Suite 107, Raleigh, NC 27616. Cash Out may be served with process by serving its registered agent, Michael Griffin, at 201 Knollcrest Lane, Knightdale, NC 27545, or wherever it may be found.

23.     On information and belief, Defendant Michael A. Griffin, Sr. is an individual residing in North Carolina and may be served with process at 201 Knollcrest Lane, Knightdale, NC 27545, or wherever he may be found. Mr. Griffin is Chief Executive Officer of Defendant Cash Out.

24.     Defendant K & B Business Center LLC dba as at least K&B Business Center Sweepstakes (hereinafter "K&B") is a gaming operator with at least one physical location located at 2406 Raleigh Road, Henderson, NC 27536, and has at least one online café found at the URL https://www.facebook.com/SFSweepstakes. K&B is a North Carolina LLC with its principal of business 113 S Garnett Street A-1, Henderson, NC 27536. K&B may be served with process by serving its registered agent, Brian Williams, at 113 S Garnett Street A-1, Henderson, NC 27536, or wherever it may be found.

25.     On information and belief, Defendant Brian Williams is an individual residing in North Carolina and may be served with process at 113 S Garnett Street A-1, Henderson, NC 27536, or wherever he may be found. Mr. Williams is a managing member of K&B.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                    **PAGE 9**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 9 of 184

26.     On information and belief, Defendant Shakira Figaro is an individual residing in North Carolina and may be served with process at 113 S Garnett Street A-1, Henderson, NC 27536, or wherever she may be found. Mrs. Figaro is a managing member of K&B.

27.     On information and belief, Defendant Blue Magic Casino is a gaming operator that has/had at least one physical location located at 837 Starling Way, Rocky Mount, NC 27803 and at least one online café found at the URL https://www.facebook.com/BlueMagic837/. Blue Magic may be served by serving its manager, Larry Hill, at 2600 S. Church Street, Rocky Mount, NC 27803-4910, or wherever it may be found.

28.     On information and belief, Defendant Larry Hill is an individual residing in North Carolina and may be served with process at 2600 S. Church Street, Rocky Mount, NC 27803-4910, or wherever he may be found. Mr. Hill is a manager of Defendant Blue Magic.

29.     Defendant www.DKBluMagic.com (hereinafter "DK Blue Magic") is a gaming operator with at least one website found at the URL www.dkblumagic.com. DK Blue Magic provides a Raleigh, NC area contact telephone number. No identifying or contact information is available. On information and belief, Google LLC hosts the domain for the website and the website is registered by the identity concealing business Contact Privacy Inc. Customer 7151571251 located at 96 Mowat Ave. Toronto, ON M4K 3K1 Canada. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on DK Blue Magic via e-mail to its website host, Google LLC, and registrant, Contact Privacy Inc.

30.     On information and belief, each of Defendants Doe 6–10 is an individual or entity who is an owner or operator of Defendant DK Blue Magic. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

**Plaintiffs' Original Verified Complaint, Application for Temporary Restraining Order, and Request for Injunctive Relief**                                        **Page 10**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 10 of 184

31.     Defendant www.FunGamesUSA.com (hereinafter "FunGamesUSA") is a gaming operator with at least one website found at the URL www.fungamesusa.com. FunGamesUSA provides a Raleigh, NC area contact telephone number. No identifying or contact information is available. On information and belief, Google LLC hosts the domain for the website and the website is registered by the identity concealing business Contact Privacy Inc. Customer 7151571251 located at 96 Mowat Ave. Toronto, ON M4K 3K1 Canada. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on FunGamesUSA via e-mail to its website host, Google LLC, and registrant, Contact Privacy Inc.

32.     On information and belief, each of Defendants Doe 11–15 is an individual or entity who is an owner or operator of Defendant FunGamesUSA. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

33.     Defendant www.LuckyGames777.com (hereinafter "LuckyGames777") is a gaming operator with at least one website found at the URL www.luckygames777.com. LuckyGames777 provides a Greenville, NC area contact telephone number. No identifying or contact information is available. On information and belief, Google LLC hosts the domain for the website and the website is registered by the identity concealing business Contact Privacy Inc. Customer 7151571251 located at 96 Mowat Ave. Toronto, ON M4K 3K1 Canada. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on LuckyGames777 via e-mail to its website host, Google LLC, and registrant, Contact Privacy Inc.

34.     On information and belief, each of Defendants Doe 16–20 is an individual or entity who is an owner or operator of Defendant LuckyGames777. When their specific identities have

been learned, Plaintiffs will amend this Complaint accordingly.

35.     Defendant Garret Hall is an individual residing in North Carolina and may be served with process at 3817 New Garden Commons, Greensboro, NC 27410, or wherever he may be found. On information and belief, Mr. Hall runs a locked Facebook group called "Sweepstakes – Equipment, Software, etc."

36.     Defendant www.NCOnlineGames.com (hereinafter "NC Online Games") is a gaming operator with at least one website found at the URL www.nconlinegames.com. NC Online Games provides a Greenville, NC area contact telephone number. NC Online Games may be served with process by serving its website registrant, Kaiser Hauter, at 2215 Oxford Road, Henderson, NC 27536, or wherever it may be found.

37.     On information and belief, Defendant Kaiser Hauter is an individual residing in North Carolina and may be served with process at 2215 Oxford Road, Henderson, NC 27536, or wherever he may be found. Mr. Hauter is the website registrant for Defendant NC Online Games.

38.     On information and belief, each of Defendants Doe 21–25 is an individual or entity who is an owner or operator of Defendant NC Online Games. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

39.     Defendant www.PhantomFire.fun (hereinafter "Phantom Fire") is a gaming operator with at least one website found at the URL www.phantomfire.fun. No identifying or contact information is available. On information and belief, GoDaddy.com, LLC hosts the domain for the website and the website is registered by the identity concealing business Domains By Proxy, LLC located at 2155 E Warner Road, Tempe, AZ 85284. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 12**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 12 of 184

4(f)(3) for a method of alternate service of process on Phantom Fire via e-mail to its website host, GoDaddy.com, LLC, and registrant, Domains By Proxy, LLC.

40.     On information and belief, each of Defendants Doe 26–30 is an individual or entity who is an owner, operator, and/or developer of Defendant Phantom Fire. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

41.     Defendant Phantom Fire mobile app (hereinafter "Phantom Fire app") is a gaming operator with at least one mobile application available on at least the Google Play app store at the URL https://play.google.com/store/apps/details?id=com.oggaming.firegames. The prior webpage provides the Phantom Fire app developer's website as http://classicgames.fun and the email address app@classicgames.fun. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on Phantom Fire app via e-mail to its website developer, website host, GoDaddy.com, LLC, and registrant, Domains By Proxy, LLC.

42.     On information and belief, each of Defendants Doe 31–35 is an individual or entity who is an owner, operator, and/or developer of Defendant Phantom Fire app. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

43.     Defendant www.phantom-wifi.com (hereinafter "Phantom Wifi") is a gaming operator with at least one website found at the URL https://phantom-wifi.com/. No identifying or contact information is available. On information and belief, GoDaddy.com, LLC hosts the domain for the website and the website is registered by the identity concealing business Domains By Proxy, LLC located at 2155 E Warner Road, Tempe, AZ 85284. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 13**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 13 of 184

4(f)(3) for a method of alternate service of process on Phantom Wifi via e-mail to its website host, GoDaddy.com, LLC, and registrant, Domains By Proxy, LLC.

44. On information and belief, each of Defendants Doe 36–40 is an individual or entity who is an owner, operator, and/or developer of Defendant Phantom Wifi. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

45. Defendant www.PlayPhantomWifi.com (hereinafter "Play Phantom Wifi") is a gaming operator with at least one website found at the URL www.playphantomwifi.com. Play Phantom Wifi directs users of its website to Defendant FunGamesUSA website to download Phantom Wifi gaming apps. The website lists the email address PlayPhantomWifi@Gmail.Com. On information and belief, GoDaddy.com, LLC hosts the domain for the website and the website is registered by the identity concealing business Domains By Proxy, LLC located at 2155 E Warner Road, Tempe, AZ 85284. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on Play Phantom Wifi via e-mail to its listed e-mail address, its website host, GoDaddy.com, LLC, and registrant, Domains By Proxy, LLC.

46. On information and belief, each of Defendants Doe 41–45 is an individual or entity who is an owner, operator, and/or developer of Defendant Play Phantom Wifi. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

47. Defendant www.DLPhantom.com (hereinafter "PhantomSoft") is a gaming operator with at least one website found at the URL www.dlphantom.com. PhantomSoft directs users of its website to various links where its software can be downloaded, installed and played. No identifying or contact information is available. On information and belief, Wild West Domains, LLC hosts the domain for the website and the website is registered by the identity concealing

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 14**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 14 of 184

business Domains By Proxy, LLC located at 2155 E Warner Road, Tempe, AZ 85284. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on PhantomSoft via e-mail to its website host, Wild West Domains, LLC, and registrant, Domains By Proxy, LLC.

48. On information and belief, each of Defendants Doe 46–50 is an individual or entity who is an owner, operator, and/or developer of Defendant PhantomSoft. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

49. Defendant www.PhoenixGold.mobi (hereinafter "Phoenix Gold") is a gaming operator with at least one website found at the URL www.phoenixgold.mobi/web-mobile/. No identifying or contact information is available. On information and belief, NameSilo, LLC hosts the domain for the website and the website is registered by the identity concealing business PrivacyGuardian.org located at 8825 N. 23rd Ave., Suite 100, Phoenix, AZ 85021. To the extent service information cannot be found, Plaintiff will seek an appropriate order pursuant to Federal Rule of Civil Procedure 4(f)(3) for a method of alternate service of process on Phoenix Gold via e-mail to its website host, NameSilo, LLC, and registrant, PrivacyGuardian.org.

50. On information and belief, each of Defendants Doe 51–55 is an individual or entity who is a developer, owner, or operator of Defendant Phoenix Gold. When their specific identities have been learned, Plaintiffs will amend this Complaint accordingly.

### III. JURISDICTION AND VENUE

51. This action substantially arises under the copyright and trademark laws of the United States, 17 U.S.C. § 101 *et seq*. and 15 U.S.C. § 1051 *et seq*.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 15**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 15 of 184

52.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338. Additionally, this Court has jurisdiction over the state law claims alleged herein under 28 U.S.C. §§ 1338 and 1367, because these claims are joined with related claims arising under the laws of the United States and because the claims are so related to the federal claims that they form part of the same case and controversy.

53.     The Court has personal jurisdiction over Defendants because each Defendant is subject to the jurisdiction of a North Carolina court of general jurisdiction.

54.     Venue in this district and division is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

## IV.     FACTUAL ALLEGATIONS

55.     Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff's factual allegations, as set forth herein, are verified through the sworn declaration of Brendan Mullins (attached as Exhibit A).

### A.     Epic Tech's Relevant Offerings

56.     Plaintiff Epic Tech is a software company that designs, develops, markets, and distributes software gaming systems. In conjunction with its affiliates, it has developed many proprietary software gaming systems which offer hundreds of legal promotion and amusement products, including those known as sweepstakes games, electronic bingo games, or skill games. One of these software programs is called Legacy. Legacy has a number of derivative versions all of which Epic Tech owns, including but not limited to, Phoenix, Maverick, Lucky Duck Slots, and Redibids. This Complaint will refer to Legacy and all of its derivatives as the "Legacy Software."

57.     Certain early versions of Epic Tech's Legacy Software were previously distributed by Epic Tech's predecessors Frontier Gaming, Inc. and Gateway Gaming, LLC. Consequently, within the gaming software and entertainment games industry, in addition to the various names for

Legacy Software, customers at times also refer to Epic Tech's Legacy Software as "Frontier," "Gateway," and/or "Classic" software. It is well understood in the industry that all such names are references to Plaintiff Epic Tech's Legacy Software.

58. Epic Tech's Legacy Software is used in a variety of locations to conduct legal gaming entertainment, and Epic Tech ensures that all such gaming complies with all relevant local, state, or national laws. Epic Tech and its licensed affiliates distribute machines preloaded with the Legacy Software, or they install the Legacy Software onto kiosks, which are primarily distributed for Tribal gaming and charitable bingo in accordance with applicable laws. In certain markets, Epic Tech has licensed independent distributors to distribute its Legacy Software as sweepstakes games to various establishments. Epic Tech also has licensed its software for use in association with a free-to-play social casino game, Lucky Duck Slots, available to be played on a mobile application that is downloadable from the Apple App Store, Google Play, or on Facebook.

59. Epic Tech has developed and marketed a number of popular and valuable games that are available on its Legacy Software. Below are exemplary screenshots of Plaintiff Epic Tech's Legacy Software game-selection menus, where patrons can choose a game to play:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**   **PAGE 17**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 17 of 184





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 18**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 18 of 184



60.     Redibids, an Epic Tech wholly owned subsidiary, offers an online penny auction website which allows participating bidders to earn game play credits to play promotional games using the Legacy Software. When a participant uses their credits to play a Legacy Software game, they earn store credit that can be used to shop at a wide range of well-known retailers.

61.     Epic Tech has licensed Redibids to use the Legacy Software as part of the rewards for participating in these auctions. Redibids in turn has entered into agreements with various end users, including at least the Cyber Skills Defendants. These agreements contain specific restrictions on the use of Epic Tech's intellectual property which the Cyber Skills Defendants have breached.

62.     Below are exemplary screenshots of Legacy Software titles available on Plaintiff Redibids' website:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 19**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 19 of 184





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**     **PAGE 20**
Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 20 of 184

63.     Each of the Legacy Software games includes unique graphics and icons that allow customers to reveal whether they won prizes or store credit in an entertaining fashion. For example, the screenshots below are of Epic Tech's well-known Lucky Duck game:





64. Epic Tech's Legacy Software was developed from scratch and is unique in the marketplace. Epic Tech has devoted substantial time and resources to the design of the software and the games that it offers on the software. Competition is fierce in the industry of computer-based promotions and entertainment games. Competitive advantage in the industry is largely dependent upon the quality of the consumer experience using the software. Each game includes unique and original images, sounds, functions, and math models underlying the game play that were designed create an enjoyable consumer experience. Consumers prefer to play the games they know, enjoy playing, and that provide fair results. Consumers do not typically examine the games closely before they begin playing, especially if they see familiar games and/or components of games, such as game titles, game selection icons, in game graphics, game play icons, and/or sounds.

65. Plaintiffs have gone to great lengths to ensure that the Legacy Software source code is protected from public disclosure and dissemination. To this end, Epic Tech currently includes a "kill code" in the software versions that it licenses, which disables the software in the event that the server is taken offline (which is unauthorized) for more than three days. Further, Epic Tech uses all possible means to repossess any servers, which are always owned by Epic Tech and never by the end user, whenever a licensing relationship ends. Plaintiffs also impose stringent contractual restrictions on any licensee's use of software, trade secrets, and confidential and proprietary information.

## B. Epic Tech's Asserted Intellectual Property

### 1. Copyrights

66. All the copyrightable works contained within the Legacy Software, including the images, sounds, and functions of the software, are original works of authorship, and Epic Tech is

the sole and exclusive holder of all rights in and to the software, including all elements of the software system.

67.    Epic Tech is the owner by assignment of federal copyright registrations for various icons, graphics, images, and screens used in connection with this software. Attached to the Complaint as Exhibit B are copies of Epic Tech owned federal copyright registrations relevant to this dispute (collectively, the "Epic Tech Copyrights").

68.    The table below provides summary information for the Epic Tech Copyrights currently asserted:

| Registration Number | Name | Copyrighted Work |
|---|---|---|
| VA0001779200 | Cherries |  |
| VA0001745457 | Double Bonus Icon |  |
| VA0001746300 | Duck Bonus Icon |  |

| VA0001745520 | Lucky Duck Game Icons and Screen |  |
| --- | --- | --- |
| VA0001747784 | Lucky Seven Icon | |
| VA0001779212 | Watermelon | |

### 2. Trademarks

#### a) Federally Registered Trademarks

69. Epic Tech also is the owner of numerous federal trademark registrations for various names, logos, and other designs that distinctively identify specific entertaining games that are part of the Legacy Software. The trademark registrations relevant to this dispute are collectively referenced herein as the "Epic Tech Registered Trademarks." True and correct copies of the U.S. trademark registrations for the Epic Tech Registered Trademarks are attached hereto as Exhibit C and are incorporated herein by reference.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 24**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 24 of 184

70.     The table below provides summary information on the Epic Tech Registered Trademarks:

| Registration Number | Trademark | Registration Type | Status |
|---|---|---|---|
| 4,250,205 | Breakfast Bonanza | Standard character mark. | Registered and incontestable. |
| 5,950,166 | Bucks and Bucks | Standard character mark. | Registered. |
| 3,959,135 | Bustin Vegas | Standard character mark. | Registered and incontestable. |
| 4,272,335 | Circus Party | Standard character mark. | Registered and incontestable. |
| 4,162,262 | Crazy Casino | Standard character mark. | Registered and incontestable |
| 4,070,405 | Deep Sea Party | Design mark.  | Registered and incontestable |
| 4,272,235 | Dinosaur Hunter | Standard character mark. | Registered and incontestable |
| 4,258,782 | Fishing Mob | Standard character mark. | Registered and incontestable. |
| 4,070,403 | Four Leaf Cash | Standard character mark. | Registered and incontestable. |
| 4,073,843 | Goldorado | Standard character mark. | Registered and incontestable. |
| 3,955,704 | Hotter Than | Design mark. | Registered and incontestable. |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 25**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 25 of 184

| Registration Number | Trademark | Registration Type | Status |
|---|---|---|---|
|  |  |  |  |
| 4,272,336 | Ice Cream Mania | Standard character mark. | Registered and incontestable. |
| 3,853,565 | Lucky Duck | Design mark.  | Registered and incontestable. |
| 4,272,210 | Mama's Money | Standard character mark. | Registered and incontestable. |
| 4,258,800 | Plush Vampire | Standard character mark. | Registered and incontestable. |
| 4,272,332 | Ritzy Kitty | Standard character mark. | Registered and incontestable. |
| 3,782,629 | Robbin Some Cash | Standard character mark. | Registered and incontestable. |
| 6,017,723 | Rolling Hot Stones | Design mark. | Registered. |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 26**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 26 of 184

| Registration Number | Trademark | Registration Type | Status |
|---|---|---|---|
| | | | |
| 4,118,449 | Super Hot Hot Hot Chili Peppers | Standard character mark. | Registered and incontestable. |
| 4,272,232 | Vulcanus | Standard character mark. | Registered and incontestable. |

71.     <u>Breakfast Bonanza</u>. Epic Tech's Breakfast Bonanza federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Breakfast Bonanza trademark was filed on May 22, 2012 and disclosed a date of first use in commerce of June 9, 2011. The USPTO registered the Breakfast Bonanza trademark on November 27, 2012 and the mark has reached incontestable status.

# BREAKFAST BONANZA

72.     Epic Tech, or its predecessor in interest, has used the Breakfast Bonanza trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 27**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 27 of 184

73.     <u>Bucks and Bucks</u>. Epic Tech's Bucks and Bucks federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Bucks and Bucks trademark was filed on June 24, 2019 and disclosed a date of first use in commerce of October 10, 2011. The USPTO registered the Bucks and Bucks trademark on December 31, 2019.

# Bucks and Bucks

74.     Epic Tech, or its predecessor in interest, has used the Bucks and Bucks trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



75.     <u>Bustin' Vegas</u>. Epic Tech's Bustin' Vegas federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Bustin' Vegas trademark was filed on February 17, 2010 and disclosed a date of first use in commerce of March 30, 2010. The USPTO registered the Bustin' Vegas trademark on May 10, 2011 and the mark has reached incontestable status.

# BUSTIN VEGAS

76.     Epic Tech, or its predecessor in interest, has used the Bustin' Vegas trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 28**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 28 of 184



77.    <u>Circus Party</u>. Epic Tech's Circus Party federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Circus Party trademark was filed on June 1, 2012 and disclosed a date of first use in commerce of July 5, 2011. The USPTO registered the Circus Party trademark on January 8, 2013 and the mark has reached incontestable status.

# CIRCUS PARTY

78.    Epic Tech, or its predecessor in interest, has used the Circus Party trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



79.    <u>Crazy Casino</u>. Epic Tech's Crazy Casino federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Crazy Casino trademark was filed on May 4, 2011 and disclosed a date of first use in commerce of September 30, 2011. The USPTO registered the Crazy Casino trademark on June 19, 2012 and the mark has reached incontestable status.

# CRAZY CASINO

**Plaintiffs' Original Verified Complaint, Application for Temporary Restraining Order, and Request for Injunctive Relief**                                               **Page 29**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 29 of 184

80.     Epic Tech, or its predecessor in interest, has used the Crazy Casino trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



81.     <u>Deep Sea Party</u>. Epic Tech's Deep Sea Party federally registered trademark is a design mark registration as reflected in the image below. The application resulting in the registration of the Deep Sea Party trademark was filed on May 4, 2011 and disclosed a date of first use in commerce of June 30, 2010. Color is not claimed as a feature of the mark. The mark consists of the stylized wording "DEEP SEA PARTY" circled by seashells against a background comprised of a bubble-filled ocean environment. The gray in the mark is for shading purposes only. The USPTO registered the Deep Sea Party trademark on December 13, 2011 and the mark has reached incontestable status.



82.     Epic Tech, or its predecessor in interest, has used the Deep Sea Party trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                            **PAGE 30**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 30 of 184



83.     <u>Dinosaur Hunter</u>. Epic Tech's Dinosaur Hunter federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Dinosaur Hunter trademark was filed on May 24, 2012 and disclosed a date of first use in commerce of July 9, 2010. The USPTO registered the Dinosaur Hunter trademark on January 8, 2013 and the mark has reached incontestable status.

# DINOSAUR HUNTER

84.     Epic Tech, or its predecessor in interest, has used the Dinosaur Hunter trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



85.     <u>Fishing Mob</u>. Epic Tech's Fishing Mob federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Fishing Mob trademark was filed on September 15, 2011 and disclosed a date of first use in commerce of August 18, 2012. The USPTO registered the Fishing Mob trademark on December 11, 2012 and the mark has reached incontestable status.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 31**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 31 of 184

# FISHING MOB

86.     Epic Tech, or its predecessor in interest, has used the Fishing Mob trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



87.     <u>Four Leaf Cash</u>. Epic Tech's Four Leaf Cash federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Four Leaf Cash trademark was filed on May 4, 2011 and disclosed a date of first use in commerce of October 21, 2007. The USPTO registered the Four Leaf Cash trademark on December 13, 2011 and the mark has reached incontestable status.

# FOUR LEAF CASH

88.     Epic Tech, or its predecessor in interest, has used the Four Leaf Cash trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



89.     <u>Goldorado</u>. Epic Tech's Goldorado federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the

registration of the Goldorado trademark was filed on May 4, 2011 and disclosed a date of first use in commerce of November 30, 2010. The USPTO registered the Goldorado trademark on December 20, 2011 and the mark has reached incontestable status.

# GOLDORADO

90.     Epic Tech, or its predecessor in interest, has used the Goldorado trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



91.     <u>Hotter Than</u>. Epic Tech's Hotter Than federally registered trademark is a design mark registration as reflected in the image below. The application resulting in the registration of the Hotter Than trademark was filed on February 17, 2010 and disclosed a date of first use in commerce of March 30, 2010. Color is not claimed as a feature of the mark. The mark consists of the words "hotter than" above an image of a devil holding a pitchfork. Flames appear in a horizontal fashion along the top and bottom of the mark, and flames also protrude from the pitchfork. The USPTO registered the Hotter Than trademark on May 3, 2011 and the mark has reached incontestable status.



92.     Epic Tech, or its predecessor in interest, has used the Hotter Than trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



93.     <u>Ice Cream Mania</u>. Epic Tech's Ice Cream Mania federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Ice Cream Mania trademark was filed on June 1, 2012 and disclosed a date of first use in commerce of August 5, 2011. The USPTO registered the Ice Cream Mania trademark on January 8, 2013 and the mark has reached incontestable status.

# ICE CREAM MANIA

94.     Epic Tech, or its predecessor in interest, has used the Ice Cream Mania trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



95. <u>Lucky Duck</u>. Epic Tech's Lucky Duck federally registered trademark is a design mark registration as reflected in the image below. The application resulting in the registration of the Lucky Duck trademark was filed on March 9, 2010 and disclosed a date of first use in commerce of April 1, 2007. Color is not claimed as a feature of the mark. The mark consists of a picture of a duck with the words "LUCKY DUCK" in front of the duck. The USPTO registered the Lucky Duck trademark on September 28, 2010 and the mark has reached incontestable status.



96. Epic Tech, or its predecessor in interest, has used the Lucky Duck trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



97.    Mama's Money. Epic Tech's Mama's Money federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Mama's Money trademark was filed on May 24, 2012 and disclosed a date of first use in commerce of October 19, 2010. The USPTO registered the Mama's Money trademark on January 8, 2013 and the mark has reached incontestable status.

# MAMA'S MONEY

98.    Epic Tech, or its predecessor in interest, has used the Mama's Money trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



99.    Plush Vampire. Epic Tech's Plush Vampire federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Plush Vampire trademark was filed on September 21, 2011 and disclosed a date of first use in commerce of May 18, 2012. The USPTO registered the Plush Vampire trademark on December 11, 2012 and the mark has reached incontestable status.

# PLUSH VAMPIRE

100.    Epic Tech, or its predecessor in interest, has used the Plush Vampire trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



101. <u>Ritzy Kitty</u>. Epic Tech's Ritzy Kitty federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Ritzy Kitty trademark was filed on June 1, 2012 and disclosed a date of first use in commerce of October 19, 2010. The USPTO registered the Ritzy Kitty trademark on January 8, 2013 and the mark has reached incontestable status.

# RITZY KITTY

102. Epic Tech, or its predecessor in interest, has used the Ritzy Kitty trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



103. <u>Robbin Some Cash</u>. Epic Tech's Robbin Some Cash federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Robbin Some Cash trademark was filed on May 14, 2009 and disclosed a date of first use in commerce of November 1, 2009. The USPTO registered the Robbin Some Cash trademark on April 27, 2010 and the mark has reached incontestable status.

# ROBBIN SOME CASH

104. Epic Tech, or its predecessor in interest, has used the Robbin Some Cash trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



105. <u>Rolling Hot Stones</u>. Epic Tech's Rolling Hot Stones federally registered trademark is a design mark registration as reflected in the image below. The application resulting in the registration of the Rolling Hot Stones trademark was filed on August 20, 2019 and disclosed a date of first use in commerce of February 1, 2010. The color(s) red, orange, yellow, and white is/are claimed as a feature of the mark. The mark consists of "Rolling Hot Stones" etched over the top of a burst of fire. The worlds "ROLLING" and "STONES" are in white. "HOT" is in red and surrounded by orange flames. The background of the mark is in red. The USPTO registered the Rolling Hot Stones trademark on March 24, 2020.



106. Epic Tech, or its predecessor in interest, has used the Rolling Hot Stones trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 38**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 38 of 184



107. <u>Super Hot Hot Hot Chili Peppers</u>. Epic Tech's Super Hot Hot Hot Chili Peppers federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Super Hot Hot Hot Chili Peppers trademark was filed on August 9, 2011 and disclosed a date of first use in commerce of July 31, 2010. The USPTO registered the Super Hot Hot Hot Chili Peppers trademark on March 27, 2012 and the mark has reached incontestable status.

## SUPER HOT HOT HOT CHILI PEPPERS

108. Epic Tech, or its predecessor in interest, has used the Super Hot Hot Hot Chili Peppers trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



109. <u>Vulcanus</u>. Epic Tech's Vulcanus federally registered trademark is a standard character mark registration as reflected in the image below. The application resulting in the registration of the Vulcanus trademark was filed on May 24, 2012 and disclosed a date of first use in commerce of November 29, 2010. The USPTO registered the Vulcanus trademark on January 8, 2013 and the mark has reached incontestable status.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 39**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 39 of 184

# VULCANUS

110.    Epic Tech, or its predecessor in interest, has used the Vulcanus trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



### b)   Unregistered Trademarks

111.    Epic Tech also is the owner of numerous unregistered trademarks for various names, logos, and other designs that distinctively identify specific entertaining games that are part of the Legacy software. The relevant trademarks are collectively referenced herein as the "Epic Tech Unregistered Trademarks."

112.    The table below provides summary information on the Epic Tech Unregistered Trademarks:

| Trademark: | Date of First Use in Commerce (at least as early as): |
|---|---|
| Aces Royale | November 10, 2011 |
| Big Dawgz | July 12, 2010 |
| Chillin 7's | December 10, 2008 |
| Cool 7's | December 10, 2008 |
| Crimson Cash | December 10, 2008 |
| Finish Line | November 10, 2011 |
| Four Leaf Luck | November 10, 2011 |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                              **PAGE 40**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 40 of 184

| Trademark: | Date of First Use in Commerce (at least as early as): |
|---|---|
| Galleon Treasure | December 4, 2009 |
| Kung Fu Fun | November 10, 2011 |
| Lone Star Gold | November 10, 2011 |
| Lot O' Cash | December 15, 2008 |
| Lucky Duck Loot | December 10, 2008 |
| Lucky Duck Slots | February 7, 2014 |
| Lucky Star | April 23, 2010 |
| Lucky Starz | November 10, 2011 |
| Lucky Touch Keno | November 10, 2011 |
| Mayan Lost City | July 28, 2010 |
| Neptune's Booty | March 1, 2011 |
| Panda's Good Fortune | November 10, 2011 |
| Ramses Riches | January 25, 2006 |
| Red White 'n Loot | November 10, 2011 |
| Reel Jungle | November 10, 2011 |
| Reels to Riches | November 10, 2011 |
| Rock Star World | March 9, 2010 |
| Safari | March 9, 2010 |
| Score N Cash | July 1, 2008 |
| Sizzlin 7$ | December 10, 2008 |
| Stars & Stripes | December 11, 2009 |
| Super Lightning Keno | November 10, 2011 |
| Super Lucky Duck Keno | November 10, 2011 |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**   **PAGE 41**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 41 of 184

| Trademark: | Date of First Use in Commerce (at least as early as): |
|---|---|
| Super Wild Keno | November 10, 2011 |
| Tiki Treasure | November 10, 2011 |
| Top Dawgz | November 10, 2011 |
| Volcano | October 27, 2010 |
| Wild Billy | March 17, 2011 |

113. _Aces Royale_. Epic Tech's Aces Royale trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Aces Royale trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



114. _Big Dawgz_. Epic Tech's Big Dawgz trademark is the subject of a pending standard character trademark registration as reflected in the image below. The application was filed on February 18, 2022 and disclosed a date of first use in interstate commerce of July 12, 2010. As of the filing of this Complaint, the application has not yet been assigned to an Examiner.

# Big Dawgz

115. Epic Tech, or its predecessor in interest, has used the Big Dawgz trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 42**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 42 of 184



116. <u>Chillin 7's</u>. Epic Tech's Chillin 7's trademark was first used in interstate commerce at least as early as December 10, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Chillin 7's trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



117. <u>Cool 7's</u>. Epic Tech's Cool 7's trademark was first used in interstate commerce at least as early as December 10, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Cool 7's trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 43**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 43 of 184

118.  <u>Crimson Cash</u>. Epic Tech's Crimson Cash trademark was first used in interstate commerce at least as early as December 10, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Crimson Cash trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



119.  <u>Finish Line</u>. Epic Tech's Finish Line trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Finish Line trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



120.  <u>Four Leaf Luck</u>. Epic Tech's Four Leaf Luck trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Four Leaf Luck trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



121.  <u>Galleon Treasure</u>. Epic Tech's Galleon Treasure trademark was first used in interstate commerce at least as early as December 4, 2009 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Galleon Treasure trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



122.  <u>Kung Fu Fun</u>. Epic Tech's Kung Fu Fun trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Kung Fu Fun trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



123.  <u>Lone Star Gold</u>. Epic Tech's Lone Star Gold trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lone Star Gold trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 45**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 45 of 184

124. <u>Lot O' Cash</u>. Epic Tech's Lot O' Cash trademark was first used in interstate commerce at least as early as December 15, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lot O' Cash trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



125. <u>Lucky Duck Loot</u>. Epic Tech's Lucky Duck Loot trademark was first used in interstate commerce at least as early as December 10, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lucky Duck Loot trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



126. <u>Lucky Duck Slots</u>. Epic Tech's Lucky Duck Slots trademark was first used in interstate commerce at least as early as February 7, 2014 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lucky Duck Slots trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 46**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 46 of 184



127.  <u>Lucky Star</u>. Epic Tech's Lucky Star trademark was first used in interstate commerce at least as early as April 23, 2010 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lucky Star trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



128.  <u>Lucky Starz</u>. Epic Tech's Lucky Starz trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lucky Starz trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 47**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 47 of 184

129.  <u>Lucky Touch Keno</u>. Epic Tech's Lucky Touch Keno trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Lucky Touch Keno trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



130.  <u>Mayan Lost City</u>. Epic Tech's Mayan Lost City trademark was first used in interstate commerce at least as early as July 28, 2010 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Mayan Lost City trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



131.  <u>Neptune's Booty</u>. Epic Tech's Neptune's Booty trademark was first used in interstate commerce at least as early as March 1, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Neptune's Booty trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 48**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 48 of 184



132.    Panda's Good Fortune. Epic Tech's Panda's Good Fortune trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Panda's Good Fortune trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



133.    Ramses Riches. Epic Tech's Ramses Riches trademark was first used in interstate commerce at least as early as January 25, 2006 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Ramses Riches trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



134.    Red White 'n Loot. Epic Tech's Red White 'n Loot trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software.

Epic Tech, or its predecessor in interest, has used the Red White 'n Loot trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



135. <u>Reel Jungle</u>. Epic Tech's Reel Jungle trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Reel Jungle trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



136. <u>Reels to Riches</u>. Epic Tech's Reels to Riches trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Reels to Riches trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 50**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 50 of 184

137. <u>Rock Star World</u>. Epic Tech's Rock World trademark was first used in interstate commerce at least as early as March 9, 2010 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Rock World trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



138. <u>Safari</u>. Epic Tech's Safari trademark was first used in interstate commerce at least as early as March 9, 2010 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Safari trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



139. <u>Score N Cash</u>. Epic Tech's Score N Cash trademark was first used in interstate commerce at least as early as July 1, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Score N Cash trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 51**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 51 of 184



140. <u>Sizzlin 7s</u>. Epic Tech's Sizzlin 7s trademark was first used in interstate commerce at least as early as December 10, 2008 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Sizzlin 7s trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



141. <u>Stars & Stripes</u>. Epic Tech's Stars & Stripes trademark was first used in interstate commerce at least as early as December 11, 2009 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Stars & Stripes trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



142. <u>Super Lightning Keno</u>. Epic Tech's Super Lightning Keno trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Super Lightning Keno trademark in

commerce since its date of first use. The below image is one example of the mark as used in commerce.



143.    <u>Super Lucky Duck Keno</u>. Epic Tech's Super Lucky Duck Keno trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Super Lucky Duck Keno trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



144.    <u>Super Wild Keno</u>. Epic Tech's Super Wild Keno trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Super Wild Keno trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



145.    <u>Tiki Treasure</u>. Epic Tech's Tiki Treasure trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Tiki Treasure trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



146.    <u>Top Dawgz</u>. Epic Tech's Top Dawgz trademark was first used in interstate commerce at least as early as November 10, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Top Dawgz trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



147.    <u>Volcano</u>. Epic Tech's Volcano trademark was first used in interstate commerce at least as early as October 27, 2010 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Volcano trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



148. <u>Wild Billy</u>. Epic Tech's Wild Billy trademark was first used in interstate commerce at least as early as March 17, 2011 in connection with Legacy software. Epic Tech, or its predecessor in interest, has used the Wild Billy trademark in commerce since its date of first use. The below image is one example of the mark as used in commerce.



149. Epic Tech has invested substantial sums of money in developing and promoting the Epic Tech Registered Trademarks, Epic Tech Unregistered Trademarks, and the underlying goodwill associated therewith. In addition, Epic Tech, and/or its licensees, currently uses the Epic Tech Registered Trademarks and Epic Tech Unregistered Trademarks in commerce in connection with software and entertainment systems.

### C. Defendants' Infringing Activities

#### 1. Developer and Distributor Information

150. Epic Tech licenses Legacy software to certain of its subsidiaries and authorized distributors. Epic Tech and its authorized licensees have the exclusive right to license, promote, and use Legacy software. None of the Defendants have any right to license, promote, or use Legacy software or any other software that violates Epic Tech's intellectual property rights in the Legacy software.

151. Defendants Good Luck, C. Patel, N. Patel, and J. Patel (the "Good Luck Defendants"); DJ's, Johnston, and Chen (the "DJ's Defendants"); LRC and Brooks (the "LRC Defendants"); Jackpot and Does 1–5 (the "Jackpot Defendants"); Coconut's and Vester (the

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 55**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 55 of 184

"Coconut's Defendants"); Cyber Skills and Mann (the "Cyber Skills Defendants"); Cash Out and Griffin (the "Cash Out Defendants"); K&B, Williams, and Figaro (the "K&B Defendants"); Blue Magic Casino and Hill (the "Blue Magic Casino Defendants"); DK Blue Magic and Does 6–10 (the "DK Blue Magic Defendants"); FunGamesUSA and Does 11–15 (the "FunGamesUSA Defendants"); LuckyGames777 and Does 16–20 (the "LuckyGames777 Defendants"); Garret Hall; NC Online Games, Hauter, and Does 21–25 (the "NC Online Games Defendants"); Phantom Fire, Does 26–30, Phantom Fire app, and Does 31–35 (the "Phantom Fire Defendants"); Phantom Wifi and Does 36–40 (the "Phantom Wifi Defendants"); Play Phantom Wifi and Does 41–45 (the "Play Phantom Wifi Defendants"); and PhantomSoft and Does 46–50 (the "PhantomSoft Defendants"), shall collectively be referred to herein as the "Phantom Defendants."

152.    The Good Luck Defendants along with Defendants Phoenix Gold and Does 51–55 shall collectively be referred to herein as the "Phoenix Gold Defendants."

### a)   Phantom Software

153.    The Phantom Defendants have obtained possession of and are distributing and operating an infringing software system known at least as "PhantomWifi," "Phantom Fire," or "PhantomSoft" (collectively "Phantom Software") clearly duplicating many of the icons, graphics, and games featured in Epic Tech's software. The Phantom Defendants have no authorization to possess, use, copy, or distribute any of Epic Tech's software or intellectual property. Upon information and belief, and through means unknown to Plaintiffs, the Phantom Defendants have gained access to or possession of Epic Tech's software, have copied many aspects of Epic Tech's software, including many of the graphics, icons, and game configurations, and are distributing this pirated software without Plaintiffs' authorization.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**    **PAGE 56**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 56 of 184

### (1)  Phantom Software Developers

154.    <u>Does 26–35 (Phantom Fire)</u>. Does 26–35 are individuals or entities that, among other things, developed a version of the infringing Phantom Software called Phantom Fire available in both a standalone software application and as a mobile app. The following exemplary images are from http://phantomfire.fun/:





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                **PAGE 57**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 57 of 184



155.    The Phantom Fire mobile app is available for download in the Google Play Store at https://play.google.com/store/apps/details?id=com.oggaming.firegames. Exemplary images available at that link demonstrate the infringing nature of the mobile app:



156.    <u>Does 36–45 (Phantom Wifi)</u>. Does 36–45 are individuals or entities that, among other things, developed a version of the infringing Phantom Software called Phantom Wifi available in both a standalone software application and as a mobile app. The following exemplary

images are screenshots from https://playphantomwifi.com/ and a marketing video found there titled "Installing Phantomwifi or River on a windows computer," also hosted on YouTube:





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 59**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 59 of 184





157.    <u>Does 46–50 (PhantomSoft)</u>. Does 46–50 are individuals or entities that, among other things, developed a version of the infringing Phantom Software called PhantomSoft available in both a standalone software application and as a mobile app. The following exemplary images are screenshots from a marketing video found at http://dlphantom.com/media/:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                          **PAGE 60**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 60 of 184





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 61**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 61 of 184





158.     Does 26–50 shall collectively be referred to herein as the "Phantom Software Developers."

### (2)   Phantom Software Distributors/Operators

159.     <u>Good Luck Defendants</u>. The Good Luck Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

160.     The Good Luck website, found at https://www.goodlucknc.com/, markets and provides distribution links to Phantom Software. These distribution links allow for the direct play

and/or download of the Phantom Software. The below images from the page found at https://www.goodlucknc.com/products/beats are exemplary (red arrow added):





161.    The Good Luck Defendants also market and operate infringing software at their physical locations. For example, the below exemplary screenshots are from pictures and videos taken of infringing Phantom Software game selection pages during a private investigator visit to 3308 Capital Boulevard, Raleigh, NC 27602, conducted on September 24, 2022:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 63**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 63 of 184





Images of first game selection page[1]

---

[1] The camera used to take the photographs with date and time stamps included herein had inadvertently been reset to the default factory setting, therefore the dates and times depicted on the images do not reflect when the photographs actually were taken.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 64**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 64 of 184





Images of second game selection page





Images of third game selection page



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**       **PAGE 66**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 66 of 184



Images of fourth game selection page

162.    The below exemplary screenshots are from pictures and videos taken of infringing Phantom Software game play during the same private investigator visit to 3308 Capital Boulevard, Raleigh, NC 27602, conducted on September 24, 2022:





163. <u>DJ's Defendants</u>. The DJ's Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

164. The DJ's Defendants have at least two Facebook pages on which they market the availability of Phantom Software at their physical locations and online. The Facebook page titled DJ's Blue Room, found at https://www.facebook.com/profile.php?id=100069934989740, lists 3909 S. Wilmington Street, Raleigh, NC 27603-3601 as a physical location and reflects the marketing of Phantom Software in person and online as seen in the following exemplary image (red arrow added):

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 68**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 68 of 184



165.  The Facebook page titled Unofficial: The Blue Room, found at https://www.facebook.com/TheBlueRoomRaleigh, lists 1728 S. Saunders Street, Raleigh, NC as a physical location and reflects the marketing of Phantom Software in person and online as seen in the following exemplary image (red arrow added):

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                        **PAGE 69**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 69 of 184



166. <u>LRC Defendants</u>. The LRC Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual presence. The Facebook page titled Play Mobile (also known as Player's Vape of Washington as seen in its profile picture), found at https://www.facebook.com/PlayersVape, shows that Play Mobile markets, distributes and operates the infringing Phantom Software (under the names "Frontier," "Phantom," and "Phantom-Wifi") online through at least the distribution link https://phantom-wifi.com/ as seen in the below exemplary images (red arrows added):

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                          **PAGE 70**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 70 of 184





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**  **PAGE 71**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 71 of 184

**THE DUCKS 🦆 ARE QUACKING AND THE BELLS 🔔 ARE RINGING ON PHANTOM!!! Get those daily bouncebacks. Cash app $playmobile007 include phantom full name and cell #**



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 72**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 72 of 184

167.    On information and belief, the LRC Defendants also marketed and operated the infringing Phantom Software at least at their former physical location at 4571 US-264, Washington, NC 27889.

168.    Jackpot Defendants. The Jackpot Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

169.    The Jackpot Defendants have at least one Facebook page on which they market the availability of Phantom Software at least at their physical locations. The Facebook page titled Jackpot Raleigh NC found at https://www.facebook.com/jackpot777nc, identifies (1) 3689 New Bern Avenue, Raleigh, NC 27610-1232; (2) 2420 Wake Forest Road, Raleigh, NC 27608; and (3) 3318 Guess Road, Durham, NC 27705 as physical locations and reflects the marketing of Phantom Software as "Frontier" at their locations as seen in the following exemplary images (red arrows added):





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 73**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 73 of 184



170.    <u>Coconut's Defendants</u>. The Coconut's Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

171.    The Coconut's Defendants have at least one Facebook page titled Coconut's Online, found at https://www.facebook.com/Coconuts-Online-606313913182138/, that lists 419 Raleigh Road, Henderson, NC 27536-5367 as a physical location and reflects the marketing of Phantom Software as "Frontier" in person and online as seen in the following exemplary images (red arrows added):

**Plaintiffs' Original Verified Complaint, Application for Temporary Restraining Order, and Request for Injunctive Relief**                                    **Page 74**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 74 of 184



**Coconut's Online**
September 29, 2020 · 🌐

Online Only!!! Come play. We have fish table and computer games. Call 252-598-2063 to get set up with an account.





👍 4                                                                                    3 comments

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 75**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 75 of 184





172.    <u>Cyber Skills Defendants</u>. The Cyber Skills Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 76**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 76 of 184

173.     The Cyber Skills Defendants' websites found at www.nclegalgames.com and www.acerevealpromo.com market and provide distribution links to Phantom Software. These distribution links allow for the direct play and/or download of the Phantom Software. The below image is from https://www.nclegalgames.com/ (red arrow added). The "Download Android" and "DOWNLOAD IPHONE" buttons redirect to https://phantom-wifi.com. The "Download Windows" button redirects to fungamesusa.com/wp-content/uploads/2020/05/phantom.msi. Both of these are locations where Phantom Software can be downloaded and played.



174.     Similarly, the below exemplary screenshot of a post from the Cyber Skill Defendants' Pat's BizCenter Facebook page (https://www.facebook.com/pats.bizcenter) reflects that Phantom Software was available at www.acerevealpromo.com (red arrow added).



175.     More generally, the Cyber Skills Defendants' Facebook pages, found at
https://www.facebook.com/pats.bizcenter,                https://www.facebook.com/ace2win1/,
https://www.facebook.com/cyberskillsinc,                https://www.facebook.com/Cyberbids2,
https://www.facebook.com/cyberfishgames,     https://www.facebook.com/GameLoungeRoxboro,
and https://www.facebook.com/hawriver.bids, market and provide distribution links to Phantom
Software. These distribution links allow for the direct play and/or download of the Phantom
Software. The pages also reflect that the Cyber Skills Defendants market Phantom Software under
"Frontier," "Gateway," "Fortune," "Phantom," and "Lucky Duck" names. Below are exemplary
images from each of these Facebook pages, as noted (red arrows added):



https://www.facebook.com/pats.bizcenter

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 79**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 79 of 184



https://www.facebook.com/ace2win1/



https://www.facebook.com/cyberskillsinc

PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF                    PAGE 80

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 80 of 184



https://www.facebook.com/Cyberbids2



https://www.facebook.com/cyberfishgames



https://www.facebook.com/GameLoungeRoxboro



https://www.facebook.com/hawriver.bids.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 82**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 82 of 184

176.    The Cyber Skills Defendants also market and operate infringing software at their physical locations. For example, the below screenshots are from pictures and videos taken of infringing Phantom Software game selection screens during a private investigator visit to CYBER BIDS, 2550 Capitol Drive, Creedmoor, NC 27522, conducted on October 29, 2022:







177.     By way of further example, the below screenshots are from pictures and videos taken of infringing Phantom Software game selection screens during a private investigator visit to The GAME ROOM, 815 N Madison Boulevard, Roxboro, NC 27533, conducted on October 29, 2022:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                        **PAGE 85**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 85 of 184







178.  <u>Cash Out Defendants</u>. The Cash Out Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

179.  The Cash Out website, found at https://www.cashoutt.com/, markets and provides distribution information for Phantom Software under the name "Frontier." This allows for "online play on any device that has an internet connection." The below image from the page found at https://wwww.cashoutt.com/about-us/ is exemplary (red arrow added):

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 88**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 88 of 184



180. The Cash Out Defendants also have at least one Facebook page on which they market the availability of Phantom Software at their physical locations and online. The Facebook page titled Vegas Style Sweepstakes, found at https://www.facebook.com/Vegasstylesweepstakes, lists Vegas Style Sweepstakes, 5540 Atlantic Springs Road Ste 107, Raleigh, NC 27616 as a physical location and reflects the marketing of Phantom Software in person and online as seen in the following exemplary image (red arrow added):

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**    **PAGE 89**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 89 of 184



181. <u>K&B Defendants</u>. The K&B Defendants market, distribute, and operate the infringing Phantom Software at least via their virtual and physical presence.

182. The K&B Defendants have at least one Facebook page titled K&B Business Center Sweepstakes, found at https://www.facebook.com/SFSweepstakes, that lists 2406 Raleigh Road, Henderson, NC 27536 as a physical location and reflects the marketing of Phantom Software as an online platform under at least the names "Gateway Online Slots" and "Frontier Online" as seen throughout the following exemplary images:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 90**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 90 of 184





183.     On information and belief, the K&B Defendants also market and operate infringing software at their physical location. For example, the below screenshots reflect the fact that gaming software is being operated at least at their 2406 Raleigh Road, Henderson, NC 27536 location:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**  **PAGE 91**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 91 of 184



184. <u>Blue Magic Casino Defendants</u>. On information and belief, the Blue Magic Casino Defendants market, distribute, and operate the infringing Phantom Software via their virtual and physical presence.

185. The Blue Magic Defendants have at least one Facebook page on which they market the availability of Phantom Software at least at their physical location. The Facebook page titled Blue Magic found at https://www.facebook.com/BlueMagic837, identifies 837 Starling Way, Rocky Mount, NC 27803 as a physical location and reflects the marketing of Phantom Software at their location as seen in the following exemplary image:

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**     **PAGE 92**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 92 of 184



186.     <u>DK Blue Magic Defendants</u>. The DK Blue Magic Defendants market, distribute, and operate the infringing Phantom Software at least via their virtual presence.

187.     The DK Blue Magic website, found at http://dkblumagic.com/, markets and provides distribution information for Phantom Software. The website provides a direct link to log into phantom-wifi.com. The below images from the pages found at http://dkblumagic.com/# and http://dkblumagic.com/#phantom are exemplary (red arrow added):

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**          **PAGE 93**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 93 of 184





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 94**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 94 of 184

188.    <u>FunGamesUSA Defendants</u>. The FunGamesUSA Defendants market, distribute, and operate the infringing Phantom Software at least via their virtual presence.

189.    The Fun Games USA website, found at https://fungamesusa.com/, markets and provides distribution information for Phantom Software. The website provides a direct link to download and play the infringing Phantom Software. The below images from https://fungamesusa.com/ are exemplary and the download button redirects the browser to https://fungamesusa.com/fun-games-usa/ (red arrow added):





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 95**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 95 of 184

190.    In turn, https://fungamesusa.com/fun-games-usa/ provides links for Android and Windows downloads of infringing Phantom Software as well as written installation instructions and links to how to videos. The below images are exemplary (red arrows added):



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 96**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 96 of 184





**Plaintiffs' Original Verified Complaint, Application for Temporary Restraining Order, and Request for Injunctive Relief**

**Page 97**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 97 of 184

191.    <u>LuckyGames777 Defendants</u>. The LuckyGames777 Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual presence.

192.    The LuckyGames777 website, found at http://luckygames777.com/, markets and provides distribution information for Phantom Software. The website provides a direct link to log into phantom-wifi.com. The below images from the pages found at http://luckygames777.com/# and http://luckygames777.com/#phantom are exemplary (red arrow added):





193.    <u>Defendant Hall</u>. Garret Hall markets, distributes, and operates the infringing Phantom Software via at least his virtual presence.

194.    Defendant Hall's locked Facebook group called "Sweepstakes – Equipment, Software, etc.", found at https://www.facebook.com/groups/2686872554779672, markets and provides a distribution link via a "Play at Home" QR code to Phantom Software. On information and belief, this link allows for the direct play of the Phantom Software after login credentials are entered. The page also reflects that Defendant Hall markets Phantom Software as "the original Frontier/Classic software package" and as "NC Compliant 'Classic.'" Below is an exemplary image from this Facebook group (red arrows added):



195.    NC Online Games Defendants. The NC Online Games Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual presence.

196.    The NC Online Games website, found at https://www.nconlinegames.com/, markets and provides distribution information for Phantom Software. The below image is exemplary (red arrow added):



197.    Phantom Fire Defendants. The Phantom Fire Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual and mobile application presence.

198.    The Phantom Fire website, found at http://phantomfire.fun/, markets and provides distribution information for Phantom Software. Exemplary images of the infringing Phantom Software have already been set forth in Paragraphs 154–155 and are incorporated herein.

199.     <u>Phantom Wifi Defendants</u>. The Phantom Wifi Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual presence.

200.     The Phantom Wifi website, found at https://phantom-wifi.com/ is a login screen to download and play infringing Phantom Software. Exemplary images of the infringing Phantom Software have already been set forth in Paragraph 156 and are incorporated herein.

201.     <u>Play Phantom Wifi Defendants</u>. The Play Phantom Wifi Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual and mobile application presence.

202.     The Play Phantom Wifi website, found at https://playphantomwifi.com/ provides links to download and play infringing Phantom Software in Android and Windows formats. Exemplary images of the infringing Phantom Software have already been set forth in Paragraph 156 and are incorporated herein.

203.     <u>PhantomSoft Defendants</u>. The PhantomSoft Defendants market, distribute, and operate the infringing Phantom Software via at least their virtual and mobile application presence.

204.     The PhantomSoft website, found at http://dlphantom.com provides links to download and play infringing Phantom Software. Exemplary images of the infringing Phantom Software have already been set forth in Paragraph 157 and are incorporated herein.

**b)  Phoenix Gold Software**

205.     <u>Phoenix Gold Defendants</u>. The Phoenix Gold Defendants have obtained possession of and are distributing an infringing software system known as "Phoenix Gold," clearly duplicating many of the icons, graphics, and games featured in Epic Tech's software. The Phoenix Gold Defendants have no authorization to possess, use, copy, or distribute any of Epic Tech's software or intellectual property. Upon information and belief, and through means unknown to Plaintiffs,

the Phoenix Gold Defendants have gained access to or possession of Epic Tech's software, have copied many aspects of Epic Tech's software, including many of the graphics, icons, and game configurations, and are distributing this copied software without Plaintiffs' authorization.

### (1) Phoenix Gold Software Developers

206. <u>Does 51–55</u>. Does 51–55 are individuals or entities that, among other things, developed the infringing Phoenix Gold Software available in both a standalone software application and as a mobile app. The following exemplary images are screenshots from a marketing video found at https://www.youtube.com/watch?v=ic2WurQOAAo&t=33s:



**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 103**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 103 of 184





**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 104**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 104 of 184



## (2) Phoenix Gold Software Distributors

207.    <u>Good Luck Defendants</u>. The Good Luck Defendants market, distribute, and operate the infringing Phoenix Gold Software via at least their virtual presence.

208.    The Good Luck website, found at https://www.goodlucknc.com/, markets and provides distribution links to Phoenix Gold Software. These distribution links allow for the direct play and/or download of the Phoenix Gold Software. At least as of November 2022, upon launching the website https://www.goodlucknc.com/ a pop up window appeared with a link to a video marketing Phoenix Gold Software found at https://www.youtube.com/watch?v=ic2WurQOAAo&t=33s promoting that the Phoenix Gold Software included "Frontier games." At the time of filing, this pop up no longer occurs. However, the promotional video for Phoenix Gold remains prominently on the homepage of the Good Luck website and exemplary screenshots from that video are included in Paragraph 206 above.

209.    As seen in the below screenshot from the goodlucknc.com website at https://www.goodlucknc.com/products/product-0d3489562283, the Good Luck Website further markets "Frontier games" as part of the infringing Phoenix Gold Software (red arrows added):



210.    Defendants Phoenix Gold and Does 51–55 market, distribute, and operate the infringing Phoenix Gold Software via at least their virtual physical presence.

211.    The Phoenix Gold website, found at https://phoenixgold.mobi, has a login screen located at https://phoenixgold.mobi/web-mobile/ to download and play infringing Phoenix Gold Software. Exemplary images of the infringing Phoenix Gold Software have already been set forth in Paragraph 206 and are incorporated herein.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                **PAGE 106**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 106 of 184

## 2. Copyright Infringement (17 U.S.C. § 101, *et seq*)

### a) Phantom Software

212. Below are side-by-side images of the works covered by the Epic Tech Copyrights compared to images contained within the Phantom Software as found on the Phantom Defendants' websites, social media platforms, and in-location computers running Phantom Software:

| Epic Tech's Legacy Software | Phantom Software |
|:---:|:---:|
| <br>Reg. No. VA 1-779-200 (cherries) | <br>phantom.msi application |
| <br>Reg. No. VA 1-745-457 (double bonus icon) | <br>phantom.msi application |
| <br>Reg. No. VA 1-746-300 (duck bonus icon) | <br>phantom.msi application |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 107**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 107 of 184



| Epic Tech's Legacy Software | Phantom Software |
|---|---|
| Reg. No. VA 1-745-520 (lucky duck game icons and screens) | phantom.msi application |
| Reg. No. VA 1-747-784 (lucky seven icon) | phantom.msi application |
| Reg. No. VA 1-779-212 (watermelon) | phantom.msi application |

213.    These comparisons confirm without doubt that Phantom Software contains strikingly similar images to copyrighted images found in Epic Tech's Legacy software. The only reasonable inference is that the Phantom Software Developers had access to and copied Epic Tech's software.

214.    Phantom Software violates Epic Tech's exclusive rights in its copyrighted works. Consequently, the Phantom Software Developers directly infringe these copyrights. The

distributors and operators of Phantom Software, including at least the Good Luck Defendants, DJ's Defendants, LRC Defendants, Coconut's Defendants, Cyber Skills Defendants, Cash Out Defendants, K&B Defendants, Blue Magic Casino Defendants, DK Blue Magic Defendants, FunGamesUSA Defendants, LuckyGames777 Defendants, Defendant Hall, NC Online Games Defendants, Phantom Fire, Phantom Fire app, Phantom Wifi, Play Phantom Wifi, and PhantomSoft, collectively the "Phantom Software Distributors," also directly infringe these copyrights through at least their distribution and operation of the infringing Phantom Software.

215.    The Phantom Software Developers also indirectly infringe Epic Tech's copyrighted works at least by intentionally inducing and encouraging the direct infringement of the Phantom Software Distributors and end users. The Phantom Software Developers also indirectly infringe Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of the Phantom Software Distributors and end users and the Phantom Software Developers have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

216.    The Phantom Software Distributors also indirectly infringe Epic Tech's copyrighted works at least by intentionally inducing and encouraging the direct infringement of Phantom Software end users. The Phantom Software Distributors also indirectly infringe Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of Phantom Software end users and the Phantom Software Distributors have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

### b)  Phoenix Gold Software

217.    Below are side-by-side images of Epic Tech's copyrighted and registered works compared to images contained within Phoenix Gold Software as found at

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                    **PAGE 109**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 109 of 184

https://www.youtube.com/watch?v=ic2WurQOAAo on Good Luck NC's YouTube channel and on their website goodlucknc.com:

| Epic Tech's Legacy Software | Phoenix Gold Software |
|---|---|
|  Reg. No. VA 1-779-200 (cherries) |  goodlucknc.com |
|  Reg. No. VA 1-745-457 (double bonus icon) |  goodlucknc.com |
|  Reg. No. VA 1-746-300 (duck bonus icon) |  goodlucknc.com |
|  Reg. No. VA 1-745-520 (lucky duck game icons and screens) |  goodlucknc.com |

| Epic Tech's Legacy Software | Phoenix Gold Software |
|---|---|
|  Reg. No. VA 1-747-784 (lucky seven icon) |  goodlucknc.com |
|  Reg. No. VA 1-779-212 (watermelon) |  goodlucknc.com |

218.    These comparisons confirm without doubt that Phoenix Gold Software contains strikingly similar images to copyrighted images found in Epic Tech's Legacy software. The only reasonable inference is that the currently unidentified individuals behind Phoenix Gold Software, Does 51–55, had access to and copied Epic Tech's software.

219.    Phoenix Gold Software violates Epic Tech's exclusive rights in its copyrighted works. Consequently, the as yet unknown developers, owners, and operators of Phoenix Gold Software, Does 51–55, directly infringe these copyrights. The distributors and operators of Phoenix Gold Software, including at least the Good Luck Defendants, also directly infringe these copyrights through at least their distribution and operation of the infringing Phoenix Gold Software.

220.    The as yet unknown developers, owners, and operators of Phoenix Gold Software, Does 51–55, also indirectly infringe Epic Tech's copyrighted works at least by intentionally inducing and encouraging the direct infringement of Phoenix Gold Software distributors, operators, and end users. Does 51–55 also indirectly infringe Epic Tech's copyrighted works

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 111**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 111 of 184

because they have the right and ability to supervise the infringing activity of Phoenix Gold Software distributors, operators, and end users and Does 51–55 have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

221.    Phoenix Gold Software distributors and operators, including at least the Good Luck Defendants, also indirectly infringe Epic Tech's copyrighted works at least by intentionally inducing and encouraging the direct infringement of Phoenix Gold Software end users. These distributors and operators also indirectly infringe Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of Phoenix Gold Software end users and the distributors and operators have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

### 3.    Trademark Infringement (15 U.S.C. § 1051, *et seq*)

#### a)    Phantom Software

222.    Without Epic Tech's consent, the Phantom Software uses in commerce marks that are counterfeit and/or confusingly similar to the Epic Tech Registered Trademarks in a manner likely to cause confusion, mistake, or deception with genuine Epic Tech products.

223.    The Phantom Software is the same or related type of goods for which Epic Tech's Registered Trademarks are registered.

224.    The Phantom Software is found on websites, social media platforms, and in-location computers running Phantom Software at gaming establishments.

225.    Below are side-by-side images of the Epic Tech Registered Trademarks compared to the marks within infringing Phantom Software, which demonstrate that many of the trademarks are materially identical:

| Epic Tech's Trademark | Phantom Software |
|---|---|
| **BREAKFAST BONANZA** <br><br> Reg. No. 4,250,205 <br><br>  <br><br> Exemplar |  <br><br> Exemplar from Cyber Bids PI visit |
| **Bucks and Bucks** <br><br> Reg. No. 5,950,166 <br><br>  <br><br> Exemplar |  <br><br> Exemplar from Cyber Bids PI visit |
| **BUSTIN VEGAS** <br><br> Reg. No. 3,959,135 <br><br>  <br><br> Exemplar |  <br><br> Exemplar from playphantomwifi.com |

| Epic Tech's Trademark | Phantom Software |
|---|---|
| # CIRCUS PARTY<br><br>Reg. No. 4,272,335<br><br><br><br>Exemplar | <br><br>Exemplar from Good Luck PI visit |
| # CRAZY CASINO<br><br>Reg. No. 4,162,262<br><br><br><br>Exemplar | <br><br>Exemplar from Good Luck PI visit |
| <br><br>Reg. No. 4,070,405<br><br><br><br>Exemplar | <br><br>Exemplar from Good Luck PI visit |

| Epic Tech's Trademark | Phantom Software |
|---|---|
| **DINOSAUR HUNTER**<br><br>Reg. No. 4,272,235<br><br><br><br>Exemplar | <br>Exemplar from playphantomwifi.com |
| **FISHING MOB**<br><br>Reg. No. 4,258,782<br><br>Exemplar | Exemplar from playphantomwifi.com |

| Epic Tech's Trademark | Phantom Software |
|---|---|
| FOUR LEAF CASH<br><br>Reg. No. 4,070,403<br><br><br><br><br><br>Exemplars | <br><br>Exemplar from playphantomwifi.com |
| GOLDORADO<br><br>Reg. No. 4,073,843<br><br><br><br>Exemplar | <br><br>Exemplar from Cyber Bids PI visit |

| Epic Tech's Trademark | Phantom Software |
|---|---|
|  Reg. No. 3,955,704  Exemplar |  Exemplar from playphantomwifi.com |
| ICE CREAM MANIA Reg. No. 4,272,336  Exemplar |  Exemplar from Good Luck PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 117**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 117 of 184

| Epic Tech's Trademark | Phantom Software |
|---|---|
|  Reg. No. 3,853,565 |  |
|  Exemplar |  Exemplars from Good Luck PI visit |
| MAMA'S MONEY<br><br>Reg. No. 4,272,210<br><br><br>Exemplar | <br>Exemplar from Good Luck PI visit |

| Epic Tech's Trademark | Phantom Software |
|---|---|
| **PLUSH VAMPIRE**<br><br>Reg. No. 4,258,800<br><br><br><br>Exemplar | <br><br>Exemplar from K&B Facebook page |
| **RITZY KITTY**<br><br>Reg. No. 4,272,332<br><br><br><br>Exemplar | <br><br>Exemplar from playphantomwifi.com |
| **ROBBIN SOME CASH**<br><br>Reg. No. 3,782,629<br><br><br><br>Exemplar | <br><br>Exemplar from playphantomwifi.com |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 119**
Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 119 of 184

| Epic Tech's Trademark | Phantom Software |
|---|---|
|   Reg. No. 6,017,723    Exemplar |   Exemplar from playphantomwifi.com |
| SUPER HOT HOT HOT CHILI PEPPERS  Reg. No. 4,118,449    Exemplar |   Exemplar from Good Luck PI visit |
| VULCANUS  Reg. No. 4,272,232    Exemplar |   Exemplar from Cyber Bids PI visit |

226. These comparisons confirm without doubt that Phantom Software contains counterfeit or confusingly similar marks to at least the Epic Tech Registered Trademarks identified in the above table. The only reasonable inference is that the currently unidentified individuals behind Phantom Software had access to and copied Epic Tech's trademarks.

227. Due to the use of marks for the names and logos of the games on the Phantom Software that are identical or materially identical, or at least confusingly similar, to Epic Tech's Registered Trademarks, as well as the unauthorized invocation of the names of Epic Tech's Frontier and Gateway software and the "Duck Game," which is made in reference to Epic Tech's very popular game "Lucky Duck," the only reasonable inference is that the Phantom Software Developers and Distributors' infringement of Epic Tech's Registered Trademarks was and is undertaken with the goal and intention of capitalizing on the goodwill and recognition of the Epic Tech Registered Trademarks.

228. Any customer who played or liked playing the games on Epic Tech's Legacy Software and finds games using the identical, materially identical, or confusingly similar names and logos on the Phantom Software on a website, a mobile application, or on a computer in a gaming establishment, the same type of places where Epic Tech's games are available, is likely to be confused as to the source of the Phantom Software games.

229. Phantom Software violates Epic Tech's exclusive rights in its trademarks. Consequently, the Phantom Software Developers directly infringe these trademarks. The Phantom Software Distributors also directly infringe these trademarks through at least their distribution and operation of the infringing Phantom Software.

230. The Phantom Software Developers also indirectly infringe Epic Tech's trademarks at least by intentionally inducing the direct infringement of the Phantom Software Distributors and

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**        **PAGE 121**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 121 of 184

end users. The Phantom Software Developers also indirectly infringe Epic Tech's trademarks because they and the Phantom Software Distributors have at least joint control over their provision of the infringing Phantom Software to end users.

231. The Phantom Software Distributors also indirectly infringe Epic Tech's trademarks at least by intentionally inducing the direct infringement of Phantom Software end users. The Phantom Software Distributors also indirectly infringe Epic Tech's trademarks because they and the Phantom Software Developers have at least joint control over their provision of the infringing Phantom Software to end users.

### b) Phoenix Gold Software

232. Without Epic Tech's consent, the Phoenix Gold Software uses in commerce marks that are counterfeit and/or confusingly similar to the Epic Tech Registered Trademarks in a manner likely to cause confusion, mistake, or deception with genuine Epic Tech products.

233. The Phoenix Gold Software is the same or related type of goods for which Epic Tech's Registered Trademarks are registered.

234. The Phoenix Gold Software is found on websites, social media platforms, and in-location computers running Phoenix Gold Software at gaming establishments.

235. Below are side-by-side images of the Epic Tech Registered Trademarks compared to the infringing Phoenix Gold Software, which demonstrate that many of the trademarks are materially identical:

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
| **BREAKFAST BONANZA**<br><br>Reg. No. 4,250,205<br><br><br><br>Exemplar | <br><br>Exemplar from goodlucknc.com |
| **Bucks and Bucks**<br><br>Reg. No. 5,950,166<br><br><br><br>Exemplar | <br><br>Exemplar from goodlucknc.com |

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
| **BUSTIN VEGAS**<br><br>Reg. No. 3,959,135<br><br><br><br>Exemplar | <br><br>Exemplar from goodlucknc.com |
| <br><br>Reg. No. 4,070,405<br><br><br><br>Exemplar | <br><br>Exemplar from goodlucknc.com |

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|

# GOLDORADO

Reg. No. 4,073,843



Exemplar



Exemplar from goodlucknc.com



Reg. No. 3,955,704



Exemplar



Exemplar from goodlucknc.com

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 125**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 125 of 184

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
|  Reg. No. 3,853,565 <br>  Exemplar |  Exemplar from goodlucknc.com |
| RITZY KITTY <br> Reg. No. 4,272,332 <br>  Exemplar |  Exemplar from goodlucknc.com |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**　　　　**PAGE 126**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 126 of 184

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
| ROBBIN SOME CASH<br><br>Reg. No. 3,782,629<br><br><br><br>Exemplar | <br><br>Exemplar from goodlucknc.com |
| <br><br>Reg. No. 6,017,723<br><br><br><br>Exemplar | <br><br>Exemplar from goodlucknc.com |



| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
| **VULCANUS** Reg. No. 4,272,232 Exemplar | Exemplar from goodlucknc.com |

236.     These comparisons confirm without doubt that Phoenix Gold Software contains counterfeit or confusingly similar marks to at least the Epic Tech Registered Trademarks identified in the above table. The only reasonable inference is that the currently unidentified individuals behind Phoenix Gold Software had access to and copied Epic Tech's trademarks.

237.     Due to the use of marks for the names and logos of the games on the Phoenix Gold Software that are identical or materially identical, or at least confusingly similar, to Epic Tech's Registered Trademarks, as well as the unauthorized invocation of the name of Epic Tech's Frontier software, the only reasonable inference is that the Phoenix Gold Software Developers and Distributors' infringement of Epic Tech's Registered Trademarks was and is undertaken with the goal and intention of capitalizing on the goodwill and recognition of the Epic Tech Registered Trademarks.

238.     Any customer who played or liked playing the games on Epic Tech's Legacy Software and finds games using the identical, materially identical, or confusingly similar names and logos on the Phoenix Gold Software, on a website, a mobile application, or on a computer in

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                   **PAGE 128**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 128 of 184

a gaming establishment, the same type of places where Epic Tech's games are available, is likely to be confused as to the source of the Phoenix Gold Software games.

239. Phoenix Gold Software violates Epic Tech's exclusive rights in its trademarks. Consequently, the as yet unknown developers, owners, and operators of Phoenix Gold Software, Does 51–55, directly infringe these trademarks. The distributors of Phoenix Gold Software, including at least the Good Luck Defendants, also directly infringe these trademarks through at least their distribution and operation of the infringing Phoenix Gold Software.

240. The as yet unknown developers, owners, and operators of Phoenix Gold Software, Does 51–55, also indirectly infringe Epic Tech's trademarks at least by intentionally inducing the direct infringement of Phoenix Gold Software distributors, operators, and end users. Does 51–55 also indirectly infringe Epic Tech's trademarks because Does 51–55 and the Phoenix Gold Software distributors and operators have at least joint control over their provision of the infringing Phoenix Gold Software to end users.

241. Phoenix Gold Software distributors and operators including at least the Good Luck Defendants, also indirectly infringe Epic Tech's trademarks at least by intentionally inducing the direct infringement of Phoenix Gold Software end users. These distributors and operators also indirectly infringe Epic Tech's trademarks because they and Does 51–55 have at least joint control over their provision of the infringing Phoenix Gold Software to end users.

### 4. False Designation of Origin (15 U.S.C. § 1125(a))

#### a) Phantom Software

242. Without Plaintiffs' consent, the Phantom Software uses in commerce marks that are confusingly similar to the Epic Tech Unregistered Trademarks in a manner likely to cause

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 129**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 129 of 184

confusion, mistake, or deception as to the affiliation, connection, or association of Phantom Software with Epic Tech and Epic Tech's genuine software.

243.    The Phantom Software is the same or related type of goods on which Epic Tech uses the Epic Tech Unregistered Trademarks.

244.    Below are side-by-side images of the Epic Tech Unregistered Trademarks compared to the infringing Phantom Software, which demonstrate that many of the trademarks are materially identical:



| Epic Tech's Trademark | Phantom Software |
|---|---|
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Cyber Bids PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 130**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 130 of 184



| Epic Tech's Trademark | Phantom Software |
|---|---|
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from Good Luck PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 131**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 131 of 184



| Epic Tech's Trademark | Phantom Software |
|---|---|
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from K&B Facebook page |



| Epic Tech's Trademark | Phantom Software |
|---|---|
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Cyber Bids PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**       **PAGE 133**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 133 of 184



| Epic Tech's Trademark | Phantom Software |
|---|---|
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Good Luck PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**     **PAGE 134**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 134 of 184

| Epic Tech's Trademark | Phantom Software |
|:---:|:---:|
|  Exemplar |  Exemplar from Cyber Bids PI visit |
|  Exemplar |  Exemplar from Good Luck PI visit |
|  Exemplar |  Exemplar from Cyber Bids PI visit |
|  Exemplar |  Exemplar from Cyber Bids PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 135**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 135 of 184

| Epic Tech's Trademark | Phantom Software |
|---|---|
|  Exemplar |  Exemplar from Good Luck PI visit |
|  Exemplar |  Exemplar from playphantomwifi.com |
|  Exemplar |  Exemplar from playphantomwifi.com |
|  Exemplar |  Exemplar from Good Luck PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**      **PAGE 136**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 136 of 184

| Epic Tech's Trademark | Phantom Software |
|:---:|:---:|



| | |
|:---:|:---:|
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from playphantomwifi.com |
| Exemplar | Exemplar from Good Luck PI visit |
| Exemplar | Exemplar from Good Luck PI visit |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 137**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 137 of 184

| Epic Tech's Trademark | Phantom Software |
|---|---|
|  Exemplar |  Exemplar from Good Luck PI visit |
|  Exemplar |  Exemplar from playphantomwifi.com |
|  Exemplar |  Exemplar from Good Luck PI visit |
|  Exemplar |  Exemplar from playphantomwifi.com |

| Epic Tech's Trademark | Phantom Software |
|:---:|:---:|
|  | |
| Exemplar | Exemplar from playphantomwifi.com |

245.    These comparisons confirm without doubt that Phantom Software contains marks that are likely to cause confusion as to the affiliation, connection, or association of Phantom Software with Epic Tech and at least the Epic Tech Unregistered Trademarks identified in the above table. The only reasonable inference is that the currently unidentified individuals behind Phantom Software had access to and copied Epic Tech's trademarks. Epic Tech has been and will continue to be damaged on account of Phantom Software's infringement.

246.    Due to the use of marks for the names and logos of the games on the Phantom Software that are identical or materially identical, or at least confusingly similar, to Epic Tech's Unregistered Trademarks, as well as the unauthorized invocation of the names of Epic Tech's Frontier and Gateway software and the "Duck Game," which is made in reference to Epic Tech's very popular game "Lucky Duck," the only reasonable inference is that the Phantom Software Developers and Distributors' infringement of Epic Tech's Unregistered Trademarks was and is undertaken with the goal and intention of capitalizing on the goodwill and recognition of the Epic Tech Unregistered Trademarks.

247.    Any customer who played or liked playing the games on Epic Tech's Legacy Software and finds games using the identical, materially identical, or confusingly similar names and logos on the Phantom Software on a website, a mobile application, or on a computer in a

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 139**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 139 of 184

gaming establishment, the same type of places where Epic Tech's games are available, is likely to be confused as to the source of the Phantom Software games.

248.    Phantom Software violates Epic Tech's exclusive rights in its unregistered trademarks. Consequently, the as yet unknown developers, owners, and operators of Phantom Software, Does 26–50, directly infringe these trademarks. The distributors and operators of Phantom Software, including at least the Good Luck Defendants, DJ's Defendants, LRC Defendants, Coconut's Defendants, Cyber Skills Defendants, Cash Out Defendants, K&B Defendants, Blue Magic Casino Defendants, DK Blue Magic Defendants, FunGamesUSA Defendants, LuckyGames777 Defendants, Defendant Hall, NC Online Games Defendants, Phantom Fire, Phantom Fire app, Phantom Wifi, Play Phantom Wifi, and PhantomSoft, also directly infringe these unregistered trademarks through at least their distribution and operation of the infringing Phantom Software.

249.    The as yet unknown developers, owners, and operators of Phantom Software, Does 26–50, also indirectly infringe Epic Tech's unregistered trademarks at least by intentionally inducing the direct infringement of Phantom Software distributors and end users. Does 26–50 also indirectly infringe Epic Tech's unregistered trademarks because they and the Phantom Software distributors and operators have at least joint control over their provision of the infringing Phantom Software to end users.

250.    Phantom Software distributors and operators, including at least the Good Luck Defendants, DJ's Defendants, LRC Defendants, Coconut's Defendants, Cyber Skills Defendants, Cash Out Defendants, K&B Defendants, Blue Magic Casino Defendants, DK Blue Magic Defendants, FunGamesUSA Defendants, LuckyGames777 Defendants, Defendant Hall, NC Online Games Defendants, Phantom Fire, Phantom Fire app, Phantom Wifi, Play Phantom Wifi,

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**    **PAGE 140**

Case 5:23-cv-00136-D-RJ    Document 1    Filed 03/20/23    Page 140 of 184

and PhantomSoft, also indirectly infringe Epic Tech's unregistered trademarks at least by intentionally inducing the direct infringement of Phantom Software end users. These distributors and operators also indirectly infringe Epic Tech's unregistered trademarks because they and Does 26–50 have at least joint control over their provision of the infringing Phantom Software to end users.

### b) Phoenix Gold Software

251. Without Plaintiffs' consent, the Phoenix Gold Software uses in commerce marks that are confusingly similar to the Epic Tech Unregistered Trademarks in a manner likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Phoenix Gold Software with Epic Tech and Epic Tech's genuine software.

252. The Phoenix Gold Software is the same or related type of goods on which Epic Tech uses the Epic Tech Unregistered Trademarks.

253. Below are side-by-side images of the Epic Tech Unregistered Trademarks compared to the infringing Phoenix Gold Software, which demonstrate that many of the trademarks are materially identical:

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
| <br>Exemplar | <br>Exemplar from goodlucknc.com |
| <br>Exemplar | <br>Exemplar from goodlucknc.com |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 142**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 142 of 184

| Epic Tech's Trademark | Phoenix Gold Software |
|:---:|:---:|



Exemplar (Finish Line Pick'em)

Exemplar from goodlucknc.com (Finish Line PICK'EM)

Exemplar (Four Leaf Luck Pick'em)

Exemplar from goodlucknc.com (Four Leaf Luck PICK'EM)

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
|  Exemplar |  Exemplar from goodlucknc.com |
|  Exemplar |  Exemplar from goodlucknc.com |

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
|  Exemplar |  Exemplar from goodlucknc.com |
|  Exemplar |  Exemplar from goodlucknc.com |

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
|  Exemplar | Exemplar from goodlucknc.com |
| Exemplar | Exemplar from goodlucknc.com |

| Epic Tech's Trademark | Phoenix Gold Software |
|---|---|
|  Exemplar |  Exemplar from goodlucknc.com |
|  Exemplar |  Exemplar from goodlucknc.com |

| Epic Tech's Trademark | Phoenix Gold Software |
|:---:|:---:|
|  | |
| Exemplar | Exemplar from goodlucknc.com |

254.    These comparisons confirm without doubt that Phoenix Gold Software contains marks that are likely to cause confusion as to the affiliation, connection, or association of Phoenix Gold Software with Epic Tech and at least the Epic Tech Unregistered Trademarks identified in the above table. The only reasonable inference is that the currently unidentified individuals behind Phoenix Gold Software had access to and copied Epic Tech's trademarks. Epic Tech has been and will continue to be damaged on account of Phoenix Gold Software's infringement.

255.    Due to the use of marks for the names and logos of the games on the Phoenix Gold Software that are identical or materially identical, or at least confusingly similar, to Epic Tech's Unregistered Trademarks, as well as the unauthorized invocation of the name of Epic Tech's Frontier software, the only reasonable inference is that the Phoenix Gold Software Developers and Distributors' infringement of Epic Tech's Unregistered Trademarks was and is undertaken with the goal and intention of capitalizing on the goodwill and recognition of the Epic Tech Unregistered Trademarks.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 148**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 148 of 184

256. Any customer who played or liked playing the games on Epic Tech's Legacy Software and finds games using the identical, materially identical, or confusingly similar names and logos on the Phoenix Gold Software on a website, a mobile application, or on a computer in a gaming establishment, the same type of places where Epic Tech's games are available, is likely to be confused as to the source of the Phoenix Gold games.

257. Phoenix Gold Software violates Epic Tech's exclusive rights in its unregistered trademarks. Consequently, the as yet unknown developers, owners, and operators of Phoenix Gold Software, Does 51–55, directly infringe these trademarks. The distributors of Phoenix Gold Software, including at least the Good Luck Defendants, also directly infringe these trademarks through at least their distribution and operation of the infringing Phoenix Gold Software.

258. The as yet unknown developers, owners, and operators of Phoenix Gold Software, Does 51–55, also indirectly infringe Epic Tech's unregistered trademarks at least by intentionally inducing the direct infringement of Phoenix Gold Software distributors, operators, and end users. Does 51–55 also indirectly infringe Epic Tech's trademarks because Does 51–55 and the Phoenix Gold Software distributors and operators have at least joint control over their provision of the infringing Phoenix Gold Software to end users.

259. Phoenix Gold Software distributors and operators including at least the Good Luck Defendants, also indirectly infringe Epic Tech's unregistered trademarks at least by intentionally inducing the direct infringement of Phoenix Gold Software end users. These distributors and operators also indirectly infringe Epic Tech's unregistered trademarks because they and Does 51–55 have at least joint control over their provision of the infringing Phoenix Gold Software to end users.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 149**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 149 of 184

### 5. Breach of Contract (under Georgia Law)

260. Plaintiff Redibids and Defendants Cyber Skills and Mann entered into two agreements on or about February 16, 2016: (1) Software License and Equipment Purchase/Lease Agreement ("Software License") and (2) Royalty Agreement. The Software License is attached hereto as Exhibit D and incorporated by reference. The Royalty Agreement is attached hereto as Exhibit E and incorporated by reference.

261. In Section 1 of the Software License, Redibids granted to Cyber Bids of NC "a limited, non-exclusive, non-transferrable and non-sublicensable right and license to use and display" Redibids' "server-based auction software" at 2550 Capitol Drive Suite 1010 Creedmoor, NC 27522.

262. During the 2016 timeframe, the Redibids version of Legacy Software contained versions of the following 25 game titles: (1) Bank Robber, (2) Big Dawgz, (3) Bustin Vegas, (4) Cash Bash, (5) Finish Line, (6) Four Leaf Cash, (7) Four Leaf Luck, (8) Hotter Than, (9) Hotter Than Hell, (10) Lucky Duck, (11) Lucky Duck Loot, (12) Mermaids Riches, (13) Mistress of Luck, (14) Paydirt, (15) Professor Atomic, (16) She Devil, (17) Super Hot Hot Hot Chilis, (18) Super Ribbit, (19) Tiki Time, (20) Tiki Treasure, (21) Top Dawgz, (22) Toucan Fever, (23) Wild Billy, (24) Wizards Lair, and (25) Zombie Cash Cafe. However, the Software License contains specific restrictions on what Cyber Bids and Mann can do with the licensed Legacy Software.

263. Specifically, as relevant here, unless Redibids provided prior written consent Section 5 restricts Cyber Bids and Mann from (a) selling, renting, leasing, sublicensing, transferring, distributing, providing access to, or otherwise making the licensed software and leased equipment to any third party; (b) reproducing, modifying, translating, reverse engineering, copying, altering, decompiling, disassembling, developing, or providing any derivative works of

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**          **PAGE 150**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 150 of 184

the licensed software or any underlying intellectual property; (e) removing the software or any leased equipment from the licensed location; or (f) taking any action likely to cause harm to Redibids' or Epic Tech's reputation or business.

264.    Redibids has never provided its written consent for Cyber Bids or Mann to perform any of the prohibited activities in Section 5.

265.    Section 12 requires Cyber Bids and Mann to "immediately" notify Redibids in writing if "at any time" they become "aware of any actual or potential infringement or unauthorized use of the Software or any other violation or infringement of the intellectual property or other proprietary rights" of Redibids or Epic Tech.

266.    Despite Cyber Bids and Mann marketing and using strikingly similar copyrighted images and counterfeit trademarks in their current game offerings to those previously licensed from Redibids, Cyber Bids or Mann has never notified Redibids or Epic Tech in writing of the actual or potential infringement or unauthorized use of this intellectual property.

267.    Section 14 requires Cyber Bids to indemnify Redibids and Epic Tech for any breach of the agreement or any use of the licensed software, in whole or in part, by a Cyber Bids customer. Such indemnification must cover, among other things, Redibids and Epic Tech's losses, damages, costs, and expenses (including reasonable attorneys' fees and court costs).

268.    As it pertains to Cyber Bids, this lawsuit falls within the indemnity provision of Section 14.

269.    In Section 19, among other things, Cyber Bids and Mann acknowledged the reasonableness of the restrictions in Section 5, that such restrictions are a material part of the agreement, and Redibids is entitled to an injunction for any breach of Section 5.

270.     Under Section 8 of the Software License, Sections 5, 8 and 10 through 25 survive any termination or expiration of the agreement.

271.     The Royalty Agreement has many provisions similar to those contained in the Software License, including indemnification for breach or use of any Redibids' Mark (Section 7) and the preamble explains the Royalty Agreement terms are intended to be supplemental to the terms and conditions in the Software License. Importantly, as part of the license terms in Section 1, Cyber Bids and Mann were granted a limited license to use and display trademarks, service marks and similar proprietary indicia of Redibids during the term of the agreement. Cyber Bids and Mann also agreed to appropriately mark any trademarks used and expressly acknowledged and agreed that Redibids had the right to provide the license.

272.     Under Section 4 of the Royalty Agreement, Sections 4 through 15 survive any termination or expiration of the agreement.

273.     Georgia law governs the Software License and Royalty Agreement.

274.     Redibids invoiced Cyber Bids and Mann for royalties due under the terms of the Royalty Agreement for at least the weeks ending February 21, 2016 to June 26, 2016. On information and belief, the Software License and Royalty Agreement were terminated on or about the end of June 2016.

## V.
## NECESSITY OF EX PARTE RELIEF

275.     Defendants have used improper means to obtain Epic Tech's valuable intellectual property, and have flagrantly continued to alter, distribute, operate, and use it for their own financial benefit. The servers and computers on which the infringing Phantom Software resides are highly mobile and can be relocated on a moment's notice. Similarly, the revenue derived from Defendants' infringement is either received in cash and held for a limited time at each operating

location or received electronically through various electronic payment methods, such as Cash App, Apple Pay, or Paypal, under which the true identity and account information is obscured. On several previous occasions, Epic Tech has learned that individuals and entities were infringing its intellectual property rights and the infringing parties hid the servers, computers, and financial assets after being notified that Epic Tech was pursuing legal action. Therefore, Plaintiffs seek *ex parte* relief, as further detailed in the motion accompanying the filing of this Complaint, so that Epic Tech can take steps to freeze the identifiable financial assets of Defendants and so that the servers, computers, and cash at each infringing location can be retrieved by an authorized constable or law enforcement officer until an appropriate hearing on the merits of Epic Tech's claims.

## V. CAUSES OF ACTION

**First Cause of Action:**
**Copyright Infringement—Phantom Software (against all Phantom Defendants)**

276.   Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

277.   Epic Tech is the owner of the Epic Tech Copyrights covering registered and valid copyrights.

278.   Upon information and belief, none of the games in the Phantom Software that the Phantom Defendants are marketing, distributing, and/or operating were independently developed by any Defendant, but instead were illegally pirated or copied from Epic Tech's software.

279.   The Phantom Defendants knew or reasonably should have known that the Phantom Software they use contains images from the Legacy Software and covered by the Epic Tech Copyrights.

280.   The Phantom Defendants, without authority, and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to Epic Tech's rights by, among

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                    **PAGE 153**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 153 of 184

other things, copying, reproducing, possessing, altering, selling, distributing, infringing, publicly displaying, disclosing, and/or otherwise using and participating in the unauthorized reproduction and display of copyrighted material belonging to Epic Tech without Epic Tech's consent.

281.     The Phantom Defendants' infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic Tech's rights.

282.     The Phantom Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq*.

283.     As detailed herein, the Phantom Defendants' infringing activities continue through the date of the filing of this complaint.

284.     As a direct and proximate result of the Phantom Defendants' copyright infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

285.     As a direct and proximate result of their wrongful conduct, the Phantom Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic Tech. Accordingly, Epic Tech is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504. Alternatively, at Epic Tech's election, pursuant to 17 U.S.C. § 504, Epic Tech is entitled to its actual damages plus the Phantom Defendants' profits from infringement, presumed to be their gross revenue reasonably related to infringement, proven at trial.

286.     Epic Tech is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                     **PAGE 154**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 154 of 184

**Second Cause of Action:**
**Contributory Copyright Infringement—Phantom Software (against all Phantom Defendants)**

287.    Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

288.    Epic Tech is the owner of the Epic Tech Copyrights covering registered and valid copyrights.

289.    The Phantom Software Developers, without authority and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Epic Tech by, among other things, intentionally inducing and encouraging the direct infringement of the Phantom Software Distributors and end users.

290.    Similarly, the Phantom Software Distributors, without authority and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Epic Tech by, among other things, intentionally inducing and encouraging the direct infringement of Phantom Software end users both in-person and online.

291.    The Phantom Defendants knew or reasonably should have known that the software and the works protected by the Epic Tech Copyrights that they were using were protected by copyright and of the infringing activity of other persons and entities that they were aiding.

292.    The Phantom Defendants' aiding of this infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic Tech's rights.

293.    The Phantom Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq*.

294.    The Phantom Defendants' aiding of these infringing activities continues through the date of the filing of this complaint.

295.     As a direct and proximate result of the Phantom Defendants' contributory copyright infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

296.     As a direct and proximate result of their wrongful conduct, the Phantom Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic Tech. Accordingly, Epic Tech is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504. Alternatively, at Epic Tech's election, pursuant to 17 U.S.C. § 504, Epic Tech is entitled to its actual damages plus the profits from the infringement to be proven at trial.

297.     Epic Tech is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**Third Cause of Action:**
**Vicarious Copyright Infringement—Phantom Software (against all Phantom Defendants)**

298.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

299.     Epic Tech is the owner of the Epic Tech Copyrights covering registered and valid copyrights.

300.     The Phantom Software Developers, without authority and willfully and wantonly, indirectly infringe Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of the Phantom Software Distributors and end users and the Phantom Software Developers have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

301. Similarly, the Phantom Software Distributors, without authority and willfully and wantonly, indirectly Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of Phantom Software end users and the Phantom Software Distributors have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

302. The Phantom Defendants knew or reasonably should have known that the software and the works protected by the Epic Tech Copyrights that they were using were protected by copyright and of the infringing activity of other persons and entities that they were aiding.

303. The Phantom Defendants' aiding of this infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic Tech's rights.

304. The Phantom Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq*.

305. The Phantom Defendants' aiding of these infringing activities continues through the date of the filing of this complaint.

306. As a direct and proximate result of the Phantom Defendants' vicarious copyright infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

307. As a direct and proximate result of their wrongful conduct, the Phantom Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic Tech. Accordingly, Epic Tech is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 157**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 157 of 184

Alternatively, at Epic Tech's election, pursuant to 17 U.S.C. § 504, Epic Tech is entitled to its actual damages plus the profits from the infringement to be proven at trial.

308.     Epic Tech is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**Fourth Cause of Action:**
**Copyright Infringement—Phoenix Gold Software (against all Phoenix Gold Defendants)**

309.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

310.     Epic Tech is the owner of the Epic Tech Copyrights covering registered and valid copyrights.

311.     Upon information and belief, none of the games in the Phoenix Gold Software that the Phoenix Gold Defendants are marketing, distributing, and/or operating were independently developed by any Defendant, but instead were illegally pirated or copied from Epic Tech's software.

312.     The Phoenix Gold Defendants knew or reasonably should have known that the Phoenix Gold Software they use contains images from the Legacy Software and covered by the Epic Tech Copyrights.

313.     The Phoenix Gold Defendants, without authority, and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to Epic Tech's rights by, among other things, copying, reproducing, possessing, altering, selling, distributing, infringing, publicly displaying, disclosing, and/or otherwise using and participating in the unauthorized reproduction and display of copyrighted material belonging to Epic Tech without Epic Tech's consent.

314.     The Phoenix Gold Defendants' infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic Tech's rights.

315. The Phoenix Gold Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq*.

316. As detailed herein, the Phoenix Gold Defendants' infringing activities continue through the date of the filing of this complaint.

317. As a direct and proximate result of the Phoenix Gold Defendants' copyright infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

318. As a direct and proximate result of their wrongful conduct, the Phoenix Gold Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic Tech. Accordingly, Epic Tech is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504. Alternatively, at Epic Tech's election, pursuant to 17 U.S.C. § 504, Epic Tech is entitled to its actual damages plus the Phoenix Gold Defendants' profits from infringement, presumed to be their gross revenue reasonably related to infringement, proven at trial.

319. Epic Tech is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**Fifth Cause of Action:**
**Contributory Copyright Infringement—Phoenix Gold Software (against all Phoenix Gold Defendants)**

320. Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

321. Epic Tech is the owner of the Epic Tech Copyrights covering registered and valid copyrights.

322. Does 51-55 (the "Phoenix Gold Software Developers"), without authority and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Epic Tech by, among other things, intentionally inducing and encouraging the direct infringement of at least Phoenix Gold, the Good Luck Defendants, and end users.

323. Similarly, Phoenix Gold and the Good Luck Defendants, without authority and willfully and wantonly, have acted in conscious and intentional disregard of and indifference to the rights of Epic Tech by, among other things, intentionally inducing and encouraging the direct infringement of Phoenix Gold Software end users both in-person and online.

324. The Phoenix Gold Defendants knew or reasonably should have known that the software and the works protected by the Epic Tech Copyrights that they were using were protected by copyright and of the infringing activity of other persons and entities that they were aiding.

325. The Phoenix Gold Defendants' aiding of this infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic Tech's rights.

326. The Phoenix Gold Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq*.

327. The Phoenix Gold Defendants' aiding of these infringing activities continues through the date of the filing of this complaint.

328. As a direct and proximate result of the Phoenix Gold Defendants' contributory copyright infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 160**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 160 of 184

329.    As a direct and proximate result of their wrongful conduct, the Phoenix Gold Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic Tech. Accordingly, Epic Tech is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504. Alternatively, at Epic Tech's election, pursuant to 17 U.S.C. § 504, Epic Tech is entitled to its actual damages plus the profits from the infringement to be proven at trial.

330.    Epic Tech is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**Sixth Cause of Action:**
**Vicarious Copyright Infringement— Phoenix Gold Software (against all Phoenix Gold Defendants)**

331.    Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

332.    Epic Tech is the owner of the Epic Tech Copyrights covering registered and valid copyrights.

333.    The Phoenix Gold Software Developers, without authority and willfully and wantonly, indirectly infringe Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of at least Phoenix Gold, the Good Luck Defendants, and end users, and the Phoenix Gold Software Developers have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

334.    Similarly, Phoenix Gold and the Good Luck Defendants, without authority and willfully and wantonly, indirectly Epic Tech's copyrighted works because they have the right and ability to supervise the infringing activity of Phoenix Gold Software end users and Phoenix Gold and the Good Luck Defendants have an obvious and direct financial interest in the infringement of Epic Tech's copyrights.

335. The Phoenix Gold Defendants knew or reasonably should have known that the software and the works protected by the Epic Tech Copyrights that they were using were protected by copyright and of the infringing activity of other persons and entities that they were aiding.

336. The Phoenix Gold Defendants' aiding of this infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Epic Tech's rights.

337. The Phoenix Gold Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq*.

338. The Phoenix Gold Defendants' aiding of these infringing activities continues through the date of the filing of this complaint.

339. As a direct and proximate result of the Phoenix Gold Defendants' vicarious copyright infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

340. As a direct and proximate result of their wrongful conduct, the Phoenix Gold Defendants have realized and will continue to realize profits and other benefits rightly belonging to Epic Tech. Accordingly, Epic Tech is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504. Alternatively, at Epic Tech's election, pursuant to 17 U.S.C. § 504, Epic Tech is entitled to its actual damages plus the profits from the infringement to be proven at trial.

341. Epic Tech is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 162**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 162 of 184

**Seventh Cause of Action:**
**Trademark Infringement—Phantom Software (against all Phantom Defendants)**

342.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

343.     Epic Tech owns the Epic Tech Registered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

344.     The Phantom Defendants' uses of the marks contained in Phantom Software in commerce in conjunction with gaming systems are likely to cause confusion, mistake, or deception of consumers as to an affiliation, connection, or association of the Phantom Defendants with Epic Tech, or as to the origin, sponsorship, or approval of the Phantom Defendants' goods, services, or commercial activities with or by Epic Tech, and such use therefore infringes the Epic Tech Registered Trademarks. The Phantom Defendants, without authorization, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Epic Tech Registered Trademarks in interstate commerce. Such actions violate 15 U.S.C. § 1114.

345.     Upon information and belief, the Phantom Defendants have constructive and actual knowledge of Epic Tech's ownership of and priority rights in the Epic Tech Registered Trademarks prior to the Phantom Defendants' junior and subsequent infringing uses of the Epic Tech Registered Trademarks. The Phantom Defendants intentionally used counterfeit versions of the Epic Tech Registered Trademarks knowing such versions were counterfeit. The Phantom Defendants' continued infringing conduct is knowing, intentional, and willful.

346.     As a direct and proximate result of the Phantom Defendants' trademark infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom

Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

347.    Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

348.    In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the Phantom Defendants' profits, presumed to be their gross revenue reasonably related to infringement, proven at trial.

349.    For the Phantom Defendants' counterfeiting, willful infringement, and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

350.    For the Phantom Defendants' counterfeiting, under 15 U.S.C. § 1117, Epic Tech also is entitled to elect at any time before final judgment to recover an award of statutory damages instead of actual damages and profits. On account of the Phantom Defendants' willful infringement, Epic Tech is entitled to the maximum statutory damages.

**Eighth Cause of Action:**
**Contributory Trademark Infringement—Phantom Software (against all Phantom Defendants)**

351.    Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

352.    Epic Tech owns the Epic Tech Registered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

353.    The Phantom Software Developers intentionally induced the direct infringement of the Phantom Software Distributors and end users. The Phantom Software Developers also

continued to supply the infringing Phantom Software to Phantom Software Distributors and end users when the Phantom Software Developers knew or had reason to know the use of the Phantom Software constituted trademark infringement.

354. The Phantom Software Distributors intentionally induced the direct infringement of the Phantom Software end users. The Phantom Software Distributors also continued to supply the infringing Phantom Software to end users when the Phantom Software Distributors knew or had reason to know the use of the Phantom Software constituted trademark infringement.

355. The Phantom Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

356. As a direct and proximate result of the Phantom Defendants' aiding of trademark infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the unlawful conduct.

357. Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

358. In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

359. For the Phantom Defendants' counterfeiting, willful infringement, and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

360. For the Phantom Defendants' counterfeiting, under 15 U.S.C. § 1117, Epic Tech also is entitled to elect at any time before final judgment to recover an award of statutory damages

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 165**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 165 of 184

instead of actual damages and profits. On account of the Phantom Defendants' willful infringement, Epic Tech is entitled to the maximum statutory damages.

**Ninth Cause of Action:**
**Vicarious Trademark Infringement—Phantom Software (against all Phantom Defendants)**

361. Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

362. Epic Tech owns the Epic Tech Registered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

363. The Phantom Software Developers indirectly infringe Epic Tech's trademarks because they and the Phantom Software Distributors have at least joint control over their provision of the infringing Phantom Software to end users.

364. The Phantom Software Distributors indirectly infringe Epic Tech's trademarks because they and the Phantom Software Developers have at least joint control over their provision of the infringing Phantom Software to end users.

365. The Phantom Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

366. As a direct and proximate result of the Phantom Defendants' aiding of trademark infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the unlawful conduct.

367. Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

368.     In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

369.     For the Phantom Defendants' counterfeiting, willful infringement, and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

370.     For the Phantom Defendants' counterfeiting, under 15 U.S.C. § 1117, Epic Tech also is entitled to elect at any time before final judgment to recover an award of statutory damages instead of actual damages and profits. On account of the Phantom Defendants' willful infringement, Epic Tech is entitled to the maximum statutory damages.

**Tenth Cause of Action:**
**Trademark Infringement—Phoenix Gold Software (against all Phoenix Gold Defendants)**

371.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

372.     Epic Tech owns the Epic Tech Registered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

373.     The Phoenix Gold Defendants' uses of the marks contained in Phoenix Gold Software in commerce in conjunction with gaming systems are likely to cause confusion, mistake, or deception of consumers as to an affiliation, connection, or association of the Phoenix Gold Defendants with Epic Tech, or as to the origin, sponsorship, or approval of the Phoenix Gold Defendants' goods, services, or commercial activities with or by Epic Tech, and such use therefore infringes the Epic Tech Registered Trademarks. The Phoenix Gold Defendants, without authorization, have used and are continuing to use spurious designations that are identical to, or

substantially indistinguishable from, the Epic Tech Registered Trademarks in interstate commerce. Such actions violate 15 U.S.C. § 1114.

374. Upon information and belief, the Phoenix Gold Defendants have constructive and actual knowledge of Epic Tech's ownership of and priority rights in the Epic Tech Registered Trademarks prior to the Phoenix Gold Defendants' junior and subsequent infringing uses of the Epic Tech Registered Trademarks. The Phoenix Gold Defendants intentionally used counterfeit versions of the Epic Tech Registered Trademarks knowing such versions were counterfeit. The Phoenix Gold Defendants' continued infringing conduct is knowing, intentional, and willful.

375. As a direct and proximate result of the Phoenix Gold Defendants' trademark infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Epic Tech.

376. Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

377. In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the Phoenix Gold Defendants' profits, presumed to be their gross revenue reasonably related to infringement, proven at trial.

378. For the Phoenix Gold Defendants' counterfeiting, willful infringement, and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                      **PAGE 168**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 168 of 184

379. For the Phoenix Gold Defendants' counterfeiting, under 15 U.S.C. § 1117, Epic Tech also is entitled to elect at any time before final judgment to recover an award of statutory damages instead of actual damages and profits. On account of the Phoenix Gold Defendants' willful infringement, Epic Tech is entitled to the maximum statutory damages.

**Eleventh Cause of Action:**
**Contributory Trademark Infringement—Phoenix Gold Software (against all Phoenix Gold Defendants)**

380. Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

381. Epic Tech owns the Epic Tech Registered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

382. The Phoenix Gold Software Developers intentionally induced the direct infringement of Phoenix Gold, the Good Luck Defendants, and end users. The Phoenix Gold Software Developers also continued to supply the infringing Phoenix Gold Software to Phoenix Gold, the Good Luck Defendants, and end users when the Phoenix Gold Software Developers knew or had reason to know the use of the Phoenix Gold Software constituted trademark infringement.

383. Phoenix Gold and the Good Luck Defendants intentionally induced the direct infringement of the Phoenix Gold Software end users. Phoenix Gold and the Good Luck Defendants also continued to supply the infringing Phoenix Gold Software to end users when the Phoenix Gold and the Good Luck Defendants knew or had reason to know the use of the Phoenix Gold Software constituted trademark infringement.

384. The Phoenix Gold Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**     **PAGE 169**
Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 169 of 184

385.     As a direct and proximate result of the Phoenix Gold Defendants' aiding of trademark infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the unlawful conduct.

386.     Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

387.     In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

388.     For the Phoenix Gold Defendants' counterfeiting, willful infringement, and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

389.     For the Phoenix Gold Defendants' counterfeiting, under 15 U.S.C. § 1117, Epic Tech also is entitled to elect at any time before final judgment to recover an award of statutory damages instead of actual damages and profits. On account of the Phoenix Gold Defendants' willful infringement, Epic Tech is entitled to the maximum statutory damages.

**Twelfth Cause of Action:**
**Vicarious Trademark Infringement—Phoenix Gold Software (against all Phoenix Gold Defendants)**

390.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

391.     Epic Tech owns the Epic Tech Registered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

392.    The Phoenix Gold Software Developers indirectly infringe Epic Tech's trademarks because they and Phoenix Gold and the Good Luck Defendants have at least joint control over their provision of the infringing Phoenix Gold Software to end users.

393.    Phoenix Gold and the Good Luck Defendants indirectly infringe Epic Tech's trademarks because they and the Phoenix Gold Software Developers have at least joint control over their provision of the infringing Phoenix Gold Software to end users.

394.    The Phoenix Gold Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

395.    As a direct and proximate result of the Phoenix Gold Defendants' aiding of trademark infringement, Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the unlawful conduct.

396.    Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

397.    In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

398.    For the Phoenix Gold Defendants' counterfeiting, willful infringement, and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

399.    For the Phoenix Gold Defendants' counterfeiting, under 15 U.S.C. § 1117, Epic Tech also is entitled to elect at any time before final judgment to recover an award of statutory

damages instead of actual damages and profits. On account of the Phoenix Gold Defendants' willful infringement, Epic Tech is entitled to the maximum statutory damages.

**Thirteenth Cause of Action:**
**Lanham Act § 43(a) Infringement—Phantom Software (against all Phantom Defendants)**

400. Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

401. Epic Tech owns the Epic Tech Unregistered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

402. The Phantom Defendants' uses of the marks contained in Phantom Software in commerce in conjunction with gaming systems are likely to cause confusion, mistake, or deception of consumers as to an affiliation, connection, or association of the Phantom Defendants with Epic Tech, or as to the origin, sponsorship, or approval of the Phantom Defendants' goods, services, or commercial activities with or by Epic Tech, and such use therefore infringes the Epic Tech Unregistered Trademarks. The Phantom Defendants, without authorization, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Epic Tech Unregistered Trademarks in interstate commerce. Such actions violate 15 U.S.C. § 1125(a), Lanham Act Section 43(a).

403. Epic Tech will suffer irreparable harm unless the Phantom Defendants' unlawful conduct is enjoined. As a proximate result of the Phantom Defendants' actions, Epic Tech has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of the Epic Tech Unregistered Trademarks. The injury to Epic Tech is ongoing, continuous, and irreparable. A monetary award of damages alone cannot fully compensate Epic Tech for its damages caused by the Phantom Defendants, and Epic Tech lacks an adequate remedy at law.

404.     Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

405.     In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the Phantom Defendants' profits, presumed to be their gross revenue reasonably related to infringement, proven at trial.

406.     For the Phantom Defendants' willful infringement and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

**Fourteenth Cause of Action:**
**Contributory Lanham Act § 43(a) Infringement—Phantom Software (against all Phantom Defendants)**

407.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

408.     Epic Tech owns the Epic Tech Unregistered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

409.     The Phantom Software Developers intentionally induced the direct infringement of the Phantom Software Distributors and end users. The Phantom Software Developers also continued to supply the infringing Phantom Software to Phantom Software Distributors and end users when the Phantom Software Developers knew or had reason to know the use of the Phantom Software constituted a violation of Lanham Act Section 43(a).

410.     The Phantom Software Distributors intentionally induced the direct infringement of the Phantom Software end users. The Phantom Software Distributors also continued to supply the infringing Phantom Software to end users when the Phantom Software Distributors knew or

had reason to know the use of the Phantom Software constituted a violation of Lanham Act Section 43(a).

411.    The Phantom Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

412.    As a direct and proximate result of the Phantom Defendants' aiding of a violation of Lanham Act Section 43(a), Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the unlawful conduct.

413.    Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

414.    In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

415.    For the Phantom Defendants' willful infringement and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

**Fifteenth Cause of Action:**
**Vicarious Lanham Act § 43(a) Infringement—Phantom Software (against all Phantom Defendants)**

416.    Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

417.    Epic Tech owns the Epic Tech Unregistered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

418.    The Phantom Software Developers indirectly infringe Epic Tech's unregistered trademarks because they and the Phantom Software Distributors have at least joint control over their provision of the infringing Phantom Software to end users that violates Lanham Act Section 43(a).

419.    The Phantom Software Distributors indirectly infringe Epic Tech's unregistered trademarks because they and the Phantom Software Developers have at least joint control over their provision of the infringing Phantom Software to end users that violates Lanham Act Section 43(a).

420.    The Phantom Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

421.    As a direct and proximate result of the Phantom Defendants' aiding of a violation of Lanham Act Section 43(a), Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phantom Defendants will continue to engage in the unlawful conduct.

422.    Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

423.    In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

424.    For the Phantom Defendants' willful infringement and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

## Sixteenth Cause of Action:

## Lanham Act § 43(a) Infringement—Phoenix Gold Software (against all Phoenix Gold Defendants)

425.     Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

426.     Epic Tech owns the Epic Tech Unregistered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

427.     The Phoenix Gold Defendants' uses of the marks contained in Phoenix Gold Software in commerce in conjunction with gaming systems are likely to cause confusion, mistake, or deception of consumers as to an affiliation, connection, or association of the Phoenix Gold Defendants with Epic Tech, or as to the origin, sponsorship, or approval of the Phoenix Gold Defendants' goods, services, or commercial activities with or by Epic Tech, and such use therefore infringes the Epic Tech Unregistered Trademarks. The Phoenix Gold Defendants, without authorization, have used and are continuing to use spurious designations that are identical to, or substantially indistinguishable from, the Epic Tech Unregistered Trademarks in interstate commerce. Such actions violate 15 U.S.C. § 1125(a), Lanham Act Section 43(a).

428.     Epic Tech will suffer irreparable harm unless the Phoenix Gold Defendants' unlawful conduct is enjoined. As a proximate result of the Phoenix Gold Defendants' actions, Epic Tech has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of the Epic Tech Unregistered Trademarks. The injury to Epic Tech is ongoing, continuous, and irreparable. A monetary award of damages alone cannot fully compensate Epic Tech for its damages caused by the Phoenix Gold Defendants, and Epic Tech lacks an adequate remedy at law.

429. Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

430. In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the Phoenix Gold Defendants' profits, presumed to be their gross revenue reasonably related to infringement, proven at trial.

431. For the Phoenix Gold Defendants' willful infringement and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

**Seventeenth Cause of Action:**
**Contributory Lanham Act § 43(a) Infringement— Phoenix Gold Software (against all Phoenix Gold Defendants)**

432. Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

433. Epic Tech owns the Epic Tech Unregistered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

434. The Phoenix Gold Software Developers intentionally induced the direct infringement of Phoenix Gold, the Good Luck Defendants, and end users. The Phoenix Gold Software Developers also continued to supply the infringing Phoenix Gold Software to Phoenix Gold, the Good Luck Defendants, and end users when the Phoenix Gold Software Developers knew or had reason to know the use of the Phoenix Gold Software constituted a violation of Lanham Act Section 43(a).

435. Phoenix Gold and the Good Luck Defendants intentionally induced the direct infringement of the Phoenix Gold Software end users. Phoenix Gold and the Good Luck

Defendants also continued to supply the infringing Phoenix Gold Software to end users when Phoenix Gold and the Good Luck Defendants knew or had reason to know the use of the Phoenix Gold Software constituted a violation of Lanham Act Section 43(a).

436.    The Phoenix Gold Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

437.    As a direct and proximate result of the Phoenix Gold Defendants' aiding of a violation of Lanham Act Section 43(a), Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the unlawful conduct.

438.    Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

439.    In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

440.    For the Phoenix Gold Defendants' willful infringement and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

**Eighteenth Cause of Action:**
**Vicarious Lanham Act § 43(a) Infringement— Phoenix Gold Software (against all Phoenix Gold Defendants)**

441.    Plaintiffs incorporate by reference each allegation made in all of the preceding paragraphs, as if fully copied herein.

442.    Epic Tech owns the Epic Tech Unregistered Trademarks and has extensively used the marks in interstate commerce in connection with electronic gaming systems.

443. The Phoenix Gold Software Developers indirectly infringe Epic Tech's unregistered trademarks because they and Phoenix Gold and the Good Luck Defendants have at least joint control over their provision of the infringing Phoenix Gold Software to end users that violates Lanham Act Section 43(a).

444. Phoenix Gold and the Good Luck Defendants indirectly infringe Epic Tech's unregistered trademarks because they and the Phoenix Gold Software Developers have at least joint control over their provision of the infringing Phoenix Gold Software to end users that violates Lanham Act Section 43(a).

445. The Phoenix Gold Defendants' continued aiding of this infringing conduct is knowing, intentional, and willful.

446. As a direct and proximate result of the Phoenix Gold Defendants' aiding of a violation of Lanham Act Section 43(a), Epic Tech has suffered, and is suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, the Phoenix Gold Defendants will continue to engage in the unlawful conduct.

447. Epic Tech is entitled to injunctive relief under 15 U.S.C. § 1116 and destruction of the infringing articles under 15 U.S.C. § 1118.

448. In addition to injunctive relief, under 15 U.S.C. § 1117, Epic Tech is entitled to recover all actual damages that it has sustained, the costs of the action, and the profits from the infringement to be proven at trial.

449. For the Phoenix Gold Defendants' willful infringement and exceptional conduct, Epic Tech is entitled to recover treble damages and its reasonable attorneys' fees under 15 U.S.C. § 1117.

**Nineteenth Cause of Action:** Breach of Contract (against Cyber Skills and Mann)

450.     Plaintiffs incorporate by reference the allegations made in the foregoing paragraphs, as if fully copied herein.

451.     Redibids and Defendants Cyber Skills (dba Cyber Bids of NC) and Mann entered into two companion contracts on or about February 16, 2016: (1) Software License and Equipment Purchase/Lease Agreement ("Software License"); and (2) Royalty Agreement. Georgia law governs both agreements.

452.     The Software License and Royalty Agreement are both valid contracts.

453.     Defendants Cyber Skills and Mann have breached at least Sections 5 and 12 of the Software License, which survive any termination or expiration of the Software License, at least by providing the Phantom Software to end users, and failing to inform Redibids "immediately" in writing of these violations of Redibids or Epic Tech' intellectual property rights.

454.     As a direct and proximate result of the breach of contract, Redibids and Epic Tech have suffered, and are suffering, actual, immediate, and irreparable harm for which no adequate remedy exists at law.

455.     Cyber Skills and Mann contractually acknowledged and agreed in Section 19 of the Software License that any breach of Section 5 would entitle Redibids to an injunction. Unless immediately restrained and enjoined, the Cyber Skills and Mann will continue to engage in the unlawful conduct and compounding the damages from their breach of at least the Software License.

456.     In addition to injunctive relief, Section 14 of the Software License also entitles Redibids and Epic Tech to recover any sustained losses, damages, costs, and expenses (including reasonable attorneys' fees and court costs) related to any unauthorized use of licensed software.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                                                     **PAGE 180**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 180 of 184

## VI.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable in this action.

## VII.    REQUEST FOR RELIEF

WHEREFORE, premises considered, Plaintiffs request that judgment be entered against Defendants, and that Plaintiffs be granted the following relief:

A.      A temporary restraining order, preliminary injunction, and permanent injunction, as requested herein (and further detailed in the contemporaneously filed Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, Asset Freeze Order, and Preliminary Injunctive Relief), enjoining and restraining Defendants, including their employers, agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them, from using Epic Tech's software, advertising, offering for sale, selling, distributing, or providing any software that infringes or is a counterfeit of any of Epic Tech's Registered Copyrights, Registered Trademarks, and Unregistered Trademarks, or taking any further action to unfairly compete with Epic Tech;

B.      An order that Defendants return all copies of Plaintiff's software wrongfully obtained in any current or former form or medium;

C.      An order that Defendants disclose the identity and location of any third parties to whom Defendants have distributed, provided, or provided access to the Phantom Software or Phoenix Gold Software.

D.      An order that all web hosting providers, domain registration services, or privacy services that engage or have engaged in hosting and/or registering any website which offers or provides access to Phantom Software or Phoenix Gold Software and all app stores that engage or have engaged in providing applications for the Phantom Software or Phoenix Gold Software, shall

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 181**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 181 of 184

disclose the identity, contact information, and IP address for the owner and developer of the websites and applications that provide Phantom Software or Phoenix Gold Software.

      E.     An order that any financial institutions, such as payment processors, banks, escrow services, or money transmitters, that engage or have engaged in the processing or transfer of money of or on behalf of any Defendant which may have any connection to Defendants' operation of physical establishments, computers, software, websites, or applications providing access to the Phantom Software or Phoenix Gold Software, shall immediately attach and freeze all funds in any accounts owned, controlled or utilized by or associated with Defendants or otherwise prohibit the transfer of any funds out of any such accounts and divert any frozen funds into a holding account for the trust of the Court that is held, maintained, and/or located exclusively within the United States, provide a report to Plaintiff identifying each of the attached accounts and any accounts from or to which funds have been transferred from the attached accounts or which are linked to or associated with each of Defendants' attached accounts (including the holder or owner of the account, contact information of the holder or owner, name of the financial institution, account number, routing number, current balance, the amount of funds attached, and any other relevant data).

      F.     An accounting for damages be conducted and judgment be rendered against Defendants.

      G.     Judgment against Defendants, jointly and severally, for actual, exemplary, statutory, compensatory, and special damages in excess of $75,000, including:

           a.   actual damages for Defendants' infringement of Epic Tech's Copyright Registrations, Registered Trademarks, Unregistered Trademarks;

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**        **PAGE 182**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 182 of 184

b.  all profits received by Defendants from the infringement of Epic Tech's Copyright Registrations, Registered Trademarks, Unregistered Trademarks;

c.  all funds unjustly received by Defendants as a result of the acts alleged herein;

d.  all damages in an amount proven at trial;

e.  any other actual and compensatory damages in an amount not presently known but to be computed during the pendency of this action; and

f.  in the alternative, statutory damages awarded from each Defendant found to be infringing Plaintiff's Copyright Registrations or found to be using a mark that is a counterfeit of Plaintiff's Registered Trademarks in violation as provided by 17 U.S.C. § 504 and 15 U.S.C. § 1117;

H.  That any damages assessed against Defendants be enhanced for willful infringement as provided by 17 U.S.C. § 504 and 15 U.S.C. § 1117;

I.  Recovery of pre- and post-judgment interest, attorneys' fees, and costs.

J.  All remedies as provided in 17 U.S.C. §§ 504(b), 504(c), and 505.

K.  All remedies as provided in 15 U.S.C. §§ 1116, 1117, and 1118.

L.  Such other and further relief requested herein and/or as to which Plaintiffs may be entitled.

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF** **PAGE 183**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 183 of 184

Date: March 20, 2023

Respectfully submitted,

*/s/ Donald R. Pocock*

Donald R. Pocock
NC Bar No. 29393
Nelson Mullins
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
Donald.Pocock@nelsonmullins.com
Telephone: (336) 774-3324
Facsimile: (336) 774-3299
Local Civil Rule 83.1(d) Counsel for
Plaintiffs

Brant C. Martin
Texas Bar No. 24002529
brant.martin@wickphillips.com
*(by special appearance to be filed)*
David W. Higer
Texas Bar No. 24127850
david.higer@wickphillips.com
*(by special appearance to be filed)*
Brett M. Pinkus
Texas Bar No. 24076625
brett.pinkus@wickphillips.com
*(by special appearance to be filed)*
Ethan A. Minshull
Texas Bar No. 24081045
ethan.minshull@wickphillips.com
*(by special appearance to be filed)*
H. Grant Tucker
Texas Bar. No. 24121422
grant.tucker@wickphillips.com
*(by special appearance to be filed)*

**WICK PHILLIPS GOULD & MARTIN,
LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**ATTORNEYS FOR PLAINTIFFS**

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR TEMPORARY
RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**                    **PAGE 184**

Case 5:23-cv-00136-D-RJ   Document 1   Filed 03/20/23   Page 184 of 184