IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-136-D

EPIC TECH, LLC, and BLUE STREAK )
BIDS, LLC, )
 )
                    Plaintiffs, )
 )
                  v. )           **ORDER**
 )
RALEIGH STARTUP SOLUTIONS LLC, )
d/b/a Good Luck NC and )
www.goodlucknc.com, et al., )
 )
                  Defendants. )

On March 20, 2023, Epic Tech, LLC ("Epic Tech") and Blue Streak Bids, LLC ("Redibids") (collectively "plaintiffs") filed a complaint against 33 named defendants and 55 unnamed defendants alleging several intellectual property claims [D.E. 1]. On June 12, 2023, defendants Michael A. Griffin, Sr. ("Griffin") and Cash Out NC, Inc. ("Cash Out"), proceeding pro se, moved to dismiss plaintiffs' claims against them [D.E. 109]. Griffin and Cash Out move to dismiss the complaint on four grounds: lack of knowledge, absence of fault, purchase of a server, and payment of a monthly maintenance fee. See [D.E. 109]. The court liberally construes the motion as a motion to dismiss for failure to state a claim. See Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). On July 3, 2023, plaintiffs responded in opposition [D.E. 119].

On August 30, 2023, plaintiffs moved for entry of default concerning 15 defendants [D.E. 135–47]. On September 20, 2023, defendant Kaiser Hauter ("Hauter") responded in opposition to the motion for entry of default [D.E. 167].

As explained below, the court denies Griffin's motion to dismiss concerning plaintiffs' claims against Cash Out, grants in part Griffin's motion to dismiss concerning plaintiffs' indirect copyright infringement and indirect trademark infringement claims, grants plaintiffs' motions for entry of default concerning twelve defendants, and denies plaintiffs' motions for entry of default concerning three defendants.

I.

Epic Tech develops and markets software programs and entertainment games. See Compl. ¶ 1. Redibids is a wholly owned subsidiary of Epic Tech. See id. at ¶ 2. Plaintiffs' offerings include software programs that host "sweepstakes games, electronic bingo games, or skill games." Id. at ¶ 56. One such software program is called "Legacy Software," which customers sometimes call "Frontier." See id. at ¶¶ 56–57. According to plaintiffs, "[i]t is well understood in the industry that [Frontier is a] reference[] to Plaintiff Epic Tech's Legacy Software." Id. at ¶ 57. Legacy Software hosts numerous "popular and valuable games." Id. at ¶ 59. Within Legacy Software, plaintiffs own numerous copyrights, registered trademarks, and unregistered marks. See, e.g., id. at ¶¶ 68, 70–110, 111–49; [D.E. 1-2] (copyright registrations); [D.E. 1-3] (trademark registrations).

Defendants are individuals and business entities that operate physical establishments, online websites, and mobile applications which offer software and games similar to plaintiffs' Legacy Software. See Compl. ¶ 6. According to plaintiffs, most defendants "have obtained possession of and are distributing and operating an infringing software system" called "Phantom Software" which "clearly duplicat[es] many of the icons, graphics, and games featured in" Legacy Software. Id. at ¶ 153. Some defendants "have obtained possession of and are distributing an infringing software system" called "Phoenix Gold" which also "duplicat[es] many of the icons, graphics, and games featured in" Legacy Software. Id. at ¶ 205. Plaintiffs allege that the developers and distributors of

2

Phantom Software and Phoenix Gold have infringed plaintiffs' copyrights, registered trademarks, and unregistered trademarks. See id. at ¶¶ 276–449.

Plaintiffs allege that Griffin markets, distributes, and operates Phantom Software, including Frontier, "via [his] virtual and physical presence." Id. at ¶¶ 178–80. Plaintiffs allege that Griffin directly infringes plaintiffs' copyrights through his distribution and operation of Phantom Software. See id. at ¶ 214. Plaintiffs also allege that Griffin indirectly infringes plaintiffs' copyrights by intentionally inducing and encouraging the direct infringement of Phantom Software end users, that Griffin has "the right and ability to supervise the infringing activity of Phantom Software end users," and he has "an obvious and direct financial interest in the infringement of Epic Tech's copyrights." Id. at ¶ 216. Plaintiffs allege that Griffin "knew or reasonably should have known that the Phantom Software [he] use[s] contains images from the Legacy Software and covered by the Epic Tech Copyrights." Id. at ¶ 279.

Plaintiffs allege that any customer who played games on Legacy Software and "finds games using the identical, materially identical, or confusingly similar names and logos on the Phantom Software . . . is likely to be confused as to the source of the Phantom Software games." Id. at ¶ 228; see id. at ¶ 247. Plaintiffs allege that Griffin directly infringes plaintiffs' trademarks through his distribution and operation of Phantom Software. See id. at ¶¶ 230, 248. Plaintiffs allege that Griffin indirectly infringes plaintiffs' copyrights and trademarks by intentionally inducing and encouraging the direct infringement of Phantom Software end users, and that Griffin has "at least joint control over the[] provision of the infringing Phantom Software to end users." Id. at ¶ 231; see id. at ¶ 250. Moreover, plaintiffs allege that Griffin's "infringement of Epic Tech's . . . Trademarks was and is undertaken with the goal and intention of capitalizing on the goodwill and recognition of" Epic Tech's trademarks. Id. at ¶ 227; see id. at ¶ 246.

II.

A.

"[A] corporation may appear in the federal courts only through licensed counsel" and "the rationale for that rule applies equally to all artificial entities" including "corporations, partnerships, [and] associations." Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201–02 (1993); see Fed. Trade Comm'n v. Pukke, 53 F.4th 80, 106 (4th Cir. 2022). Thus, Griffin may not proceed pro se on behalf of Cash Out. See [D.E. 109]. Accordingly, the court denies Griffin's motion to dismiss plaintiffs' claims against Cash Out. See, e.g., Pukke, 53 F.4th at 106.

As for Griffin, a motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166; Occupy Columbia v. Haley, 738 F.3d 107, 117 n.7 (4th Cir. 2013). Additionally, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiffs classify Griffin as a "Phantom Defendant." Compl. ¶ 151. Against all Phantom Defendants, plaintiffs bring claims for: (1) copyright infringement, see id. at ¶¶ 276–86; (2) contributory copyright infringement, see id. at ¶¶ 287–97; (3) vicarious copyright infringement, see id. at ¶¶ 298–308; (4) trademark infringement, see id. at ¶¶ 342–50; (5) contributory trademark infringement, see id. at ¶¶ 351–60; (6) vicarious trademark infringement, see id. at ¶¶ 361–70; (7) Lanham Act section 43(a) infringement, see id. at ¶¶ 400–06; (8) contributory Lanham Act section 43(a) infringement, see id. at ¶¶ 407–15; and (9) vicarious Lanham Act section 43(a) infringement, see id. at ¶¶ 416–24.[1]

---

[1] Plaintiffs' Lanham Act section 43(a) infringement claims effectively duplicate plaintiffs' trademark infringement claims, but for unregistered marks. See, e.g., Matal v. Tam, 582 U.S. 218, 225–26 (2017); Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767–68 (1992); Lamparello v. Falwell, 420 F.3d 309, 312–13 (4th Cir. 2005); MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 341 (4th Cir. 2001); JFY Props. II LLC v. Gunther Land, LLC, Civ. No. 17-1653, 2019 WL 4750340, at *14–15 (D. Md. Sept. 30, 2019) (unpublished). Thus, the court considers them together.

5

As for plaintiffs' copyright claims, copyright infringement is a violation of "any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a); see Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 203 (4th Cir. 1997). Thus, to state a claim for direct copyright infringement, a plaintiff must plausibly allege: (1) "ownership of the allegedly infringed material" and (2) a "violat[ion] [of] at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001); see Humphrey's & Partners Architects v. Lessard Design, Inc., 790 F.3d 532, 537 (4th Cir. 2015).

A plaintiff lacking direct evidence of copying can prove copying via circumstantial evidence. See Humphrey's & Partners, 790 F.3d at 537. A plaintiff can "create a presumption of copying by indirect evidence establishing that the defendant had access to the copyrighted work and that the defendant's work is substantially similar to the protected material." Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 801 (4th Cir. 2001) (quotation omitted); see Bldg. Graphics, Inc. v. Lennar Corp., 708 F.3d 573, 577 (4th Cir. 2013). "To prove access, the plaintiff must show that the defendant had an opportunity to view or copy the work." Bldg. Graphics, 708 F.3d at 577. "A mere possibility that such an opportunity could have arisen will not suffice. Rather, it must be reasonably possible that the paths of the infringer and the infringed work crossed paths." Towler v. Sayles, 76 F.3d 579, 582 (4th Cir. 1996); see Bldg. Graphics, 708 F.3d at 577.

Under the "strikingly similar doctrine," the court may draw "an inference of access in cases where the two works in question are so similar as to create a high probability of copying and negate the reasonable possibility of independent creation" provided the inference is "reasonable in light of all the evidence." Bouchat v. Balt. Ravens, Inc., 241 F.3d 350, 355–56 (4th Cir. 2001); see Arnett v. Jackson, No. 5:16-CV-872, 2017 WL 3493606, at *4 (E.D.N.C. Aug. 14, 2017) (unpublished). To proceed under this theory, the plaintiff must plausibly allege "a striking similarity between the

6

works by alleging facts supporting striking similarity." Arnett, 2017 WL 3493606, at *4 (cleaned up).

"[D]istributing unlawful copies of a copyrighted work does violate the copyright owner's distribution rights, and as a result, constitutes copyright infringement." Hotaling, 118 F.3d at 203. To establish distribution of a copyrighted work, a party must show that an unlawful copy was disseminated to the public. See id.; 17 U.S.C. § 106(3). Making unauthorized copies available to the public suffices to establish distribution within the meaning of the statute. See Hotaling, 118 F.3d at 203.

Plaintiffs do not allege that Griffin had access to Legacy Software and copied it. Rather, plaintiffs allege that the "Phantom Software Developers had access to and copied Epic Tech's software." Compl. ¶ 213 (emphasis added). The "Phantom Software Developers" are numerous Doe defendants in the Complaint. Griffin, by contrast, is a "Phantom Software Distributor." Compare id. at ¶¶ 154–58, with id. at ¶¶ 178–80. Plaintiffs allege that the Phantom Software Distributors directly infringe plaintiffs' copyrights by distributing and operating the infringing Phantom Software. Id. at ¶¶ 214, 278, 280. Plaintiffs plausibly allege that the Phantom Software Distributors, including Griffin, distributed unlawful copies of Frontier to the public. Accordingly, plaintiffs state a claim for direct copyright infringement against Griffin. See, e.g., Hotaling, 118 F.3d at 203; Sed, Inc. of S.C. v. Seven Creeks Ent., LLC, No. 7:10-CV-222, 2012 WL 525730, at *1–2 (E.D.N.C. Feb. 16, 2012) (unpublished); Paramount Pictures Corp. v. Maurice, No. 3:06-cv-140, 2007 WL 1039950, at *1 (W.D.N.C. Mar. 31, 2007) (unpublished); Midway Mfg. Co. v. Dirkshneider, 571 F. Supp. 282, 284–86 (D. Neb. 1983).

As for plaintiffs' contributory copyright infringement claim against Griffin, "[u]nder a theory of contributory [copyright] infringement, one who, with knowledge of the infringing activity,

7

induces, causes, or materially contributes to the infringing conduct of another is liable for the infringement, too." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 550 (4th Cir. 2004); see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). Negligence "does not suffice to prove contributory [copyright] infringement." BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc., 881 F.3d 293, 308–10 (4th Cir. 2018); see, e.g., Sony Music Ent. v. Cox Commc'ns, Inc., 426 F. Supp. 3d 217, 230 (E.D. Va. 2019). Rather, "one infringes contributorily by intentionally inducing or encouraging direct infringement." BMG Rts. Mgmt., 881 F.3d at 308 (emphasis in original) (quotation omitted); see Grokster, 545 U.S. at 930. Thus, the Fourth Circuit has held that at least willful blindness is required. See BMG Rts. Mgmt., 881 F.3d at 308–10; Oppenheimer v. Morgan, No. 1:19-cv-2, 2019 WL 2617080, at *3 (W.D.N.C. June 26, 2019) (unpublished).

Plaintiffs allege that Griffin knew, or reasonably should have known, that he was distributing and operating infringing software. See, e.g., Compl. ¶¶ 153, 178–180, 214, 216, 291. Plaintiffs' allegation that Griffin "should have known" that he was distributing and operating infringing software is a negligence allegation and fails to state a claim for contributory infringement. See BMG Rts. Mgmt., 881 F.3d at 308 & n.4. Furthermore, plaintiffs fail to plausibly allege that Griffin "knew" or was "willfully blind" to the fact that he was distributing and operating infringing software. Plaintiffs allege that the Cash Out website "markets and provides distribution information for Phantom Software under the name Frontier." Compl. ¶ 179. Plaintiffs, however, allege no facts to support the inference that Griffin knows that the software he distributes is the allegedly infringing Phantom product. Accordingly, plaintiffs fail to state a claim for contributory copyright infringement, and the court dismisses the claim against Griffin. See, e.g., Sony Music Ent., 426 F. Supp. 3d at 230.

8

As for plaintiffs' vicarious copyright infringement claim, a defendant "infringes [a copyright] vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Grokster, 545 U.S. at 930; Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 435 & n.17 (1984). Plaintiffs allege that Griffin intentionally induced and encouraged the direct infringement of plaintiffs' copyrights by Phantom Software end users, and that Griffin has "the right and ability to supervise the infringing activity of Phantom Software end users" and he has "an obvious and direct financial interest in the infringement of Epic Tech's copyrights." Id. at ¶ 216. Plaintiffs, however, do not explain who these "end users" are, how they infringe plaintiffs' copyrights, or how Griffin fails "to police the conduct of the primary infringer." Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); see Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 513–14 (4th Cir. 2002). Accordingly, plaintiffs fail to plausibly allege a supervisory relationship. Furthermore, vicarious infringement, like contributory infringement, requires knowledge. See, e.g., Gershwin, 443 F.2d at 1162–63. As discussed, plaintiffs fail to plausibly allege Griffin's knowledge that the product he distributes is in fact infringing. Thus, the court dismisses this claim against Griffin. See, e.g., Levi v. Twentieth Century Fox Film Corp., No. 3:16cv129, 2017 WL 1227933, at *10 (E.D. Va. Mar. 31, 2017) (unpublished).

As for plaintiffs' registered and unregistered trademark claims, to state a claim for direct trademark infringement, a plaintiff must plausibly allege "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred in commerce; (4) that the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers." People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir.

9

2001) (quotations omitted); see 15 U.S.C. § 1114; Lone Star Steakhouse & Saloon v. Alpha of Va., 43 F.3d 922, 930 (4th Cir. 1995).

Plaintiffs plausibly allege they own certain registered and distinctive unregistered trademarks. See, e.g., Compl. ¶¶ 111–49; [D.E. 1-3]. Plaintiffs plausibly allege that the marks at issue are distinctive, Phantom Software's marks are similar to Legacy Software's marks, and the marks all identify legal gambling games. See Compl. ¶¶ 70–110, 111–49, 225, 244; see, e.g., Lone Star Steakhouse & Saloon, Inc., 43 F.3d at 933 (listing the factors that guide the "likelihood of confusion" element). Plaintiffs plausibly allege Griffin uses the allegedly infringing marks in commerce in connection with his sale of legal gambling games. See Compl. ¶¶ 178–80. In light of the similarities between plaintiffs' marks and the allegedly infringing marks, plaintiffs plausibly allege Griffin used the marks in a manner likely to confuse consumers. See id. at ¶¶ 225, 244. Indeed, Griffin also uses the "Frontier" name in marketing materials. See id. at ¶ 179. Accordingly, plaintiffs state a claim for trademark infringement against Griffin. See, e.g., EndoSurg Med., Inc. v. EndoMaster Med., Inc., 71 F. Supp. 3d 525, 552–53 (D. Md. 2014). Thus, the court denies Griffin's motion to dismiss these direct trademark infringement claims.

To be liable under a theory of contributory trademark infringement, "a defendant must (1) intentionally induce another to infringe a trademark, or (2) continue to supply a product to a third party with actual or constructive knowledge of the infringement." Size, Inc. v. Network Sols., Inc., 255 F. Supp. 2d 568, 572 (E.D. Va. 2003); see Inwood Lab'ys, Inc. v. Ives Laby's, Inc., 456 U.S. 844, 854 (1982). The plaintiff also must plausibly allege "underlying direct infringement," i.e., "there must necessarily have been an infringing use of the plaintiff's mark that was encouraged or facilitated by the defendant." Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 163 (4th Cir. 2012); see Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 618 F.3d 441, 451 (4th Cir. 2010).

10

Plaintiffs fail to plausibly allege Griffin had the requisite intent for contributory trademark infringement. See Inwood Lab'ys, Inc., 456 U.S. at 854; cf. Compl. ¶¶ 178–80, 222–30, 242–49. Plaintiffs offer conclusory allegations that Griffin "knew or had reason to know the use of the Phantom Software constituted trademark infringement." Id. at ¶¶ 354, 409. Plaintiffs fail, however, to plausibly allege facts supporting that conclusion considering Griffin markets the product as Frontier. See id. at ¶ 179. In other words, plaintiffs' factual allegations are equally consistent with Griffin having no knowledge or reason to know that he distributes an infringing software. Cf. Twombly, 550 U.S. at 556–57. Moreover, plaintiffs fail to identify how the end users to whom Griffin marketed the product are themselves infringing the mark. Cf. Compl. ¶¶ 354, 409. Thus, the court grants Griffin's motion to dismiss these claims.

As for plaintiffs' vicarious trademark infringement claims, plaintiffs must plausibly allege "that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Rosetta Stone Ltd., 676 F.3d at 165 (quotation omitted). Plaintiffs only offer conclusory allegations concerning Griffin's alleged vicarious liability. See, e.g., Compl. ¶¶ 231, 250. Plaintiffs do not plausibly allege that Griffin has any joint ownership or control, or an apparent or actual partnership, with the Phantom Software Developers over the Phantom Software. See, e.g., Rosetta Stone Ltd., 676 F.3d at 165. Accordingly, the court grants Griffin's motion to dismiss the vicarious trademark infringement claims against him.

Griffin asserts other grounds to dismiss, such as lack of knowledge and good faith licensing. See [D.E. 109]. The court does not consider these defenses when evaluating if the plaintiffs plausibly allege the elements of a claim. Thus, the court does not resolve these defenses at this time. See, e.g., KBC Asset Mgmt. NV v. DXC Tech. Co., 19 F.4th 601, 611 n.3 (4th Cir. 2021); Goodman

v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Keenan v. Ahern, 524 F. Supp. 3d 472, 476 (E.D. Va. 2021).

B.

Plaintiffs move for entry of default concerning 15 defendants. See [D.E. 135–47]. Hauter has responded in opposition. See [D.E. 167]. Federal Rule of Civil Procedure 55 "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). The non-defaulting party must move for entry of default under Rule 55(a). See Fed. R. Civ. P. 55(a). "The Clerk of the Court's interlocutory entry of default pursuant to Federal Rule of Civil Procedure 55(a) provides notice to the defaulting party prior to the entry of default judgment by the court." Hummel v. Hall, 868 F. Supp. 2d 543, 547 (W.D. Va. 2012); see Carbon Fuel Co. v. USX Corp., 153 F.3d 719, 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998) (unpublished table decision).

Twelve of the defendants against whom plaintiffs seek an entry of default have failed to plead or otherwise defend. Those defendants are Phantom Fire Mobile App, DLPhantom.com, DKBluMagic.com, FunGamesUSA.com, LuckyGames777.com, PhantomFire.fun, phantom-wifi.com, PlayPhantomWifi.com, K&B Business Center LLC, Treasure Sweepstakes Inc., PhoenixGold.mobi, and Blue Magic Casino. Plaintiffs have proved service for these defendants. See [D.E. 32, 33, 41, 117, 121]. Accordingly, the court grants plaintiffs' motions for entries of default concerning those defendants. See Fed. R. Civ. P. 55.

Plaintiffs, however, have improperly served three of the defendants against whom plaintiffs seek entry of default: Brian Williams ("Williams"), Shakira Figaro ("Figaro"), and NCOnlineGames.com. See [D.E. 143, 145]; cf. [D.E. 167] 12. Federal Rule of Civil Procedure 4 requires that service be made on individuals by serving them personally, leaving a copy of the

12

summons and complaint at the individual's dwelling or usual place or abode, or by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Individuals also may be served according to the law of the state in which service is made. See Fed. R. Civ. P. 4(e)(1). A corporation, partnership, or unincorporated association may be served in the same manner as an individual or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(A)–(B).

Plaintiffs served NCOnlineGames.com with process by serving Hauter, who owns the domain name. See [D.E. 33] 12; [D.E. 89] ¶ 37. In plaintiffs' declarations in support of the Clerk's entry of default, plaintiffs do not list Hauter as a registered or authorized agent of NCOnlineGames.com despite doing so for other defendants. Compare, e.g., [D.E. 135] 5 ("The Summons and Complaint were served on Phantom Mobile by delivering the documents to Mike Vernon, who is designated by law to accept service on behalf of Phantom Mobile . . . ."), with [D.E. 145] 5 ("The Summons and Complaint were served on NC Online by delivering the documents to Kaiser Hauter . . . ."). The Federal Rules of Civil Procedure do not authorize service of process on a domain name owner. See Fed. R. Civ. P. 4(h). The North Carolina Rules of Civil Procedure do not either. See N.C. Gen. Stat. § 1A-4, Rule 4(j)(8). Moreover, plaintiffs cite no federal or North Carolina caselaw that permits service of process on a domain name owner in this way.[2] Accordingly,

---

[2] The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), authorizes certain suits against domain names and domain name owners when the domain name infringes a trademark. See 15 U.S.C. § 1125(d); see, e.g., Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com, 128 F. Supp. 2d 340, 343–47 (E.D. Va. 2001). Plaintiffs do not bring any claims under the ACPA.

plaintiffs have failed to properly serve NCOnlineGames.com. Thus, the court denies plaintiffs' motion for entry of default concerning NCOnlineGames.com.

Plaintiffs served Williams and Figaro by leaving process with Williams's and Figaro's "Co-Worker/Colleague" Ingrid Salazar ("Salazar"). [D.E. 33] 1, 10. As with Hauter, plaintiffs fail to identify Salazar as an authorized agent for service of process on Williams and Figaro. See, e.g., id.; [D.E. 143] 7. Plaintiffs also cite no evidence that Salazar in fact delivered service to Williams and Figaro. The Federal Rules of Civil Procedure do not authorize individuals to accept service on behalf of their coworkers or colleagues. See Fed. R. Civ. P. 4(e). The North Carolina Rules of Civil Procedure do not either. See N.C. Gen. Stat. § 1A-4, Rule 4(j)(1). Accordingly, plaintiffs have failed to properly serve Williams and Figaro. See, e.g., Washington v. Cline, 233 N.C. App. 412, 421–24, 761 S.E.2d 650, 656–58 (2014); Hunter v. Hunter, 69 N.C. App. 659, 663, 317 S.E.2d 910, 912 (1984). Thus, the court denies plaintiffs' motion for entry of default concerning Williams and Figaro.

III.

In sum, the court DENIES Griffin's motion to dismiss [D.E. 109] concerning plaintiffs' claims against Cash Out, GRANTS IN PART Griffin's motion to dismiss, and DISMISSES plaintiffs' indirect copyright infringement and indirect trademark infringement claims against Griffin. The court GRANTS plaintiffs' motions for entry of default concerning eleven defendants [D.E. 135–42, 144, 146, 147], GRANTS IN PART and DENIES IN PART plaintiffs' motion for entry of default [D.E. 143], and DENIES plaintiffs' motion for entry of default [D.E. 145]. This order SHALL serve as ENTRY OF DEFAULT against defendants Phantom Fire Mobile App, DLPhantom.com, DKBluMagic.com, FunGamesUSA.com, LuckyGames777.com, PhantomFire.fun,

phantom-wifi.com, PlayPhantomWifi.com, K&B Business Center LLC, Treasure Sweepstakes Inc., PhoenixGold.mobi, and Blue Magic Casino.

SO ORDERED. This 29 day of December, 2023.

JAMES C. DEVER III
United States District Judge